89 N.J. 595 (1982)
446 A.2d 871
E.E.B. AND J.E.B., HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
D.A. A/K/A D.M. AND J.M. AND CHILDREN'S SERVICES DIVISION, HOLMES COUNTY, DEPARTMENT OF PUBLIC WELFARE, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued January 26, 1982.
Decided June 21, 1982.
*598 Edward Emmett O'Farrell, a member of the Ohio Bar, argued the cause for appellants D.A. a/k/a D.M. and J.M. (John D. Atlas, Director, Passaic County Legal Aid Society; Madeline L. Houston, on the brief).
Donald M. Ferraiolo argued the cause for appellant Children's Services Division, Holmes County, Department of Public Welfare (Faro & Ferraiolo, attorneys).
Joseph T. Afflitto argued the cause for respondents (Diamond, Diamond & Afflitto, attorneys).
The opinion of the Court was delivered by POLLOCK, J.
The issue on this appeal is whether the courts of New Jersey have jurisdiction to determine the best interest of a child in an interstate custody dispute. In this case, prospective adoptive parents seek to retain custody of a three and one-half year old girl who has lived with them since six days after her birth. The Chancery Division determined that the best interest of the child was to remain with the adoptive parents. Previously, the natural mother had obtained a writ of habeas corpus from the Holmes County Juvenile Court in Ohio, the state of residence of the mother and adoptive parents at the time of the child's birth. In that proceeding, the Ohio courts determined the natural mother's right to custody and, without conducting a best interest hearing, ordered the return of the child to her.
We must determine whether the decision of the Chancery Division gave proper effect to the Ohio determination in light of the full faith and credit clause, U.S.Const., Art. IV, § 1, the Parental Kidnapping Prevention Act of 1980, § 8, 28 U.S.C.A., § 1738A (PKPA), and the Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-28 to -52 (UCCJA). We conclude that, by *599 declining to determine the best interest of the child, Ohio enabled the New Jersey courts to modify the determination without violating the full faith and credit clause or the federal and state statutes.

I
In the vortex of this interstate child custody dispute is a little girl. She was born in Ohio on October 13, 1978 and has lived in New Jersey since October, 1979. A month before the child's birth, her natural mother consulted with the Ohio Welfare Department concerning relinquishment of the child at birth. On October 16, 1978, three days after the child's birth, the natural mother and father, who were unmarried, signed a sworn "Permanent Surrender of Child" form that surrendered custody of the child to the Holmes County Welfare Department. Three days later the Department delivered the child to the prospective adoptive parents. On October 23, 1978, one week after signing the surrender form, the natural mother appeared at the Department and orally revoked the surrender. Nonetheless, the Department did not inform the Ohio Juvenile Court of the revocation, and that court approved the surrender on the following day.
Two months later, on December 29, 1978, the mother instituted a habeas corpus proceeding to obtain custody of the child. The natural father did not join in the Ohio proceeding, but is joined as a defendant in the present proceeding. In February, 1979, the Ohio Juvenile Court rendered a written opinion finding that the mother had validly consented to the surrender and denying the writ. The Ohio Court of Appeals affirmed that decision in June of 1979. In both courts, the adoptive parents not only opposed the issuance of the writ, but sought a best interest hearing for the child.
On July 23, 1979, the mother filed an appeal to the Supreme Court of Ohio. In October, 1979, while the case was pending before that Court, the adoptive parents and the child moved *600 from Ohio to New Jersey because the father, a clergyman, had been appointed pastor of a church in Wayne, New Jersey. Before leaving Ohio, the adoptive parents notified the Department of their plans and continued to communicate with the Department throughout the proceedings.
On July 23, 1980, the Ohio Supreme Court reversed and remanded the matter to the Juvenile Court. 63 Ohio St.2d 227, 407 N.E.2d 524 (1980). The Supreme Court concluded that the natural mother had revoked her consent before the Juvenile Court approved the surrender of the child to the Department. Id. at 229-31, 407 N.E.2d at 526-27. The adoptive parents filed a motion with the Ohio Supreme Court for a rehearing, asserting that the Court should have remanded the case to the Juvenile Court "to conduct a best interest hearing prior to any decision as to whether the writ of habeas corpus should issue."
While the motion for rehearing was pending, the Juvenile Court held an informal meeting attended by counsel for the natural mother, counsel for the Department and counsel for the adoptive parents. At the meeting, counsel for the adoptive parents stated that if the Ohio Supreme Court denied the motion, he would nonetheless press for a best interest hearing before the Juvenile Court. On September 12, 1980, the Ohio Supreme Court denied the motion for rehearing, and on September 23, 1980 the Juvenile Court issued the writ of habeas corpus.
The adoptive parents instituted this action for custody on September 29, 1980 in the Superior Court of New Jersey, Chancery Division. On December 1, 1980, the Chancery Division found that it had jurisdiction and ordered a best interest hearing. Although the Appellate Division denied the natural mother's motion for leave to appeal, we directed the Appellate Division to review the Chancery Division's finding of jurisdiction. In an unpublished opinion, the Appellate Division sustained the finding of jurisdiction of the New Jersey courts. We denied a motion for leave to appeal.
*601 Simultaneously with the remand to the Appellate Division, we remanded the matter to the Chancery Division for an expedited best interest hearing. 85 N.J. 503 (1981). Underlying our remand to the Chancery Division was the need for a hearing to resolve the competing claims of the natural mother and adoptive parents in the best interest of the child. We remanded out of a profound respect for the ties that normally bind natural parents and child. See Santosky v. Kramer, ___ U.S. ___, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (in an action determining rights of parents in natural child, due process requires proof of "permanent neglect" by clear and convincing evidence). Nonetheless, we also recognized that the psychological bonding between adoptive parents and child may become stronger than natural ties. Sorentino v. Family & Childrens Soc. of Elizabeth, 74 N.J. 313, 322-25 (1977); Sees v. Baber, 74 N.J. 201, 222-23 (1977).
Although duly notified, neither the mother nor her attorney appeared or participated in the best interest hearing in the Chancery Division. After appointing a guardian ad litem for the child, the Chancery Division concluded that her best interest was to remain with the adoptive parents. The guardian ad litem for the child supports that conclusion. On this appeal, the natural mother, who has never seen the child, does not challenge the finding that the best interest of the child is to remain with the adoptive parents, and we accept that finding.
Before us, the natural mother contends that under the full faith and credit clause, PKPA, and UCCJA, the Ohio decree precluded the New Jersey courts from considering the best interest of the child. The adoptive parents do not seek to relitigate the invalidity of the natural mother's surrender of the child. They accept that determination, but contend that because Ohio declined to conduct a best interest hearing, the New Jersey courts may determine the best interest of the child.
To summarize, although all parties resided in Ohio at the time of the commencement of the habeas corpus proceeding, by the time of the final decision of the Ohio courts, only the natural *602 mother remained in Ohio. Long before the commencement of the New Jersey proceedings, the adoptive parents and the child resided in New Jersey. The adoptive parents left Ohio for New Jersey not to evade an Ohio court order, but because of a change in the father's employment. They commenced the New Jersey proceeding only after the Ohio courts declined to order a best interest hearing.
We granted certification to re-examine the jurisdiction of New Jersey courts in interstate custody disputes in light of the significant changes in both federal and state legislation since our decision in Borys v. Borys, 76 N.J. 103 (1978). We now affirm the judgment of the Appellate Division that the New Jersey courts may conduct a best interest hearing.

II
At the outset, our attention centers on the confluence of the full faith and credit clause, PKPA, and UCCJA. We proceed in waters uncharted by the United States Supreme Court, which has declined to determine whether custody decrees are entitled to full faith and credit and has not yet construed PKPA. In analyzing PKPA and UCCJA, we must determine the extent to which they affect our decision in Borys that custody decrees are not entitled to full faith and credit.
In determining whether the New Jersey courts may conduct a best interest hearing, the first question is whether the full faith and credit clause requires our courts to follow the Ohio decision. That clause provides:
Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof. [U.S.Const., Art. IV, § 1.] See 28 U.S.C.A. § 1738.
Although interstate custody decrees arise with increasing frequency, the United States Supreme Court has refrained from determining whether custody decrees are entitled to full faith and credit in all circumstances. See Webb v. Webb, 451 U.S. *603 493, 101 S.Ct. 1889, 68 L.Ed.2d 392 (1981) (applicability of full faith and credit to foreign custody decree dismissed on jurisdictional grounds because of failure to preserve federal question in state court); Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962) (custody settlement not res judicata as a matter of state law); Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958) (forum state should give custody decree same effect as rendering state; because of changed circumstances, forum state need not give full faith and credit to custody decree from rendering state); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) (rendering state did not obtain personal jurisdiction of mother and forum state not obliged to give full faith and credit to ex parte award of custody to father because child custody subject to strong local policies that outweigh demands of full faith and credit).
Confronted with the silence of the United States Supreme Court, litigants in custody disputes were tossed on a sea of uncertainty. In that setting, we concluded that the welfare of children in New Jersey could be protected better by treating foreign custody decrees as an exception to the full faith and credit clause. Borys v. Borys, supra, 76 N.J. at 120. Legislative efforts have taken a different tack. UCCJA sought to protect the welfare of children in interstate custody disputes by introducing certainty and stability in the choice of forum and by encouraging interstate cooperation in the interest of the child. UCCJA § 2; N.J.S.A. 2A:34-29. PKPA addresses the same concerns as UCCJA and determines as a matter of federal law the extraterritorial effect of foreign custody decrees.
To the extent that they limit the discretion of forum states to ignore foreign custody decrees, PKPA and UCCJA modify Borys, supra. As its title suggests, one of the purposes of PKPA was to deter interstate abduction of children by contesting parents in custody disputes. PKPA, however, has a broader reach and applies not only to abductions by parents, but to disputes between all persons who seek custody of a child. See Pub.L.No. 96-611, § 7, 94 Stat. 3568.
*604 For our purposes, the key provision of PKPA is section 8, 28 U.S.C.A. § 1738A.[1] It requires the courts of every state to enforce a child custody determination of a sister-state[2] made consistently with the provisions of the Act.[3] 28 U.S.C.A. § 1738A(a). Thus, the Act seeks to eliminate the incentive for a parent to remove a minor child to another jurisdiction while *605 shopping for a sympathetic forum. See Parental Kidnapping Act: Hearings on H.R. 1290 Before the Subcommittee on Crime of the House Committee on the Judiciary, 96th Cong., 2d Sess. 81 (1980) (Statement of Mark M. Richard, Deputy Assistant Attorney General).
To ascertain whether PKPA applies to this controversy, we turn first to the definition of a "custody determination", which includes "an order of a court providing for the custody" of a child. 28 U.S.C.A. § 1738A(b)(3). The Ohio writ of habeas corpus, which directed the adoptive parents "to present" the child to the mother at the Department, satisfies that definition. Furthermore, that determination was consistent with the PKPA. The child was living in Ohio during the commencement of the Ohio proceedings and the courts had jurisdiction under Ohio law. Therefore, the critical question is whether New Jersey courts have violated the Act by not enforcing the Ohio writ.[4]
In child custody determinations Ohio, like New Jersey, emphasizes the best interest of the child. See In re Cunningham, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034, 1038 (1979). To protect this important interest, Ohio permits a hearing before executing a writ of habeas corpus concerning custody of a child. In re Hua, 62 Ohio St.2d 227, 233, 405 N.E.2d 255, 260-61 (1980); In re Haws, 64 Ohio App.2d 168, 168, 411 N.E.2d 802 (1977); In re Young, 58 Ohio St.2d 90, 90, 388 N.E.2d 1235, 1236 (1979); *606 Hughes v. Scaffide, 58 Ohio St.2d 88, 89, 388 N.E.2d 1233, 1234 (1979); In re Messner, 19 Ohio App.2d 33, 37, 249 N.E.2d 532, 535 (1969); In re Howland, 115 Ohio App. 186, 184 N.E.2d 228, 230 (1961). But see In re McTaggart, 2 Ohio App.2d 214, 222, 207 N.E.2d 562, 567 (1965). Thus, Ohio would permit modification of a writ of habeas corpus based on the best interest of the child. Because Ohio did not modify its decree, we must determine whether New Jersey may modify the decree in the best interest of the child.
Before PKPA, the New Jersey courts could have modified the Ohio decision because that decision was subject to modification in Ohio. New York ex rel. Halvey v. Halvey, 330 U.S. 610, 614, 67 S.Ct. 903, 906, 91 L.Ed. 1133 (1947). PKPA permits the courts of the forum state to modify the custody determination of another state on two conditions: the forum has jurisdiction over the matter and the other state has either lost jurisdiction or has declined to exercise it. 28 U.S.C.A. § 1738A(f). New Jersey, which has been the home of the child and parents for nearly three years, clearly has jurisdiction of the subject matter. Thus, the question is whether, by failing to grant a best interest hearing, the Ohio courts declined to exercise jurisdiction to modify the decree awarding custody to the natural mother.
Notwithstanding repeated requested by counsel for the adoptive parents, expressed most vividly in the motion for rehearing before the Ohio Supreme Court, no court in Ohio has determined the best interest of the child. Without making an express determination, the Ohio Supreme Court declined to order a best interest hearing both in its original decision and in its denial of the motion for rehearing. Possibly that Court contemplated, in light of its decision in In re Hua, supra, that the Juvenile Court would conduct a best interest hearing before issuing the writ. The Juvenile Court, however, proceeded to issue the writ without considering the best interest of the child. Perhaps, that court failed to conduct a best interest hearing because it recognized that neither the adoptive parents nor the child resided any longer in Ohio. We need not dwell on these speculations because *607 the clear implication is that the Ohio courts declined to exercise jurisdiction to conduct a best interest hearing.
We hold that Ohio's failure to conduct a best interest hearing constitutes a refusal to exercise jurisdiction under 28 U.S.C.A. § 1738A(f)(2). Under PKPA, therefore, New Jersey is free to modify the Ohio decree. This result comports with the congressional intent that child custody decisions be made in the state best able to determine the best interest of the child. See Pub.L.No. 96-611, § 7, 94 Stat. 3568.

III
The authority of the New Jersey courts to conduct a best interest hearing is controlled not only by PKPA, but also by UCCJA. Like PKPA, UCCJA attempts to bring order to the preexisting chaos in interstate child custody disputes. Commissioners' Prefatory Note to UCCJA, 9 U.L.A. at 114 (1979). Indeed, the National Conference of Commissioners on Uniform State Laws proposed UCCJA in response to the "public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents or other persons battle over their custody in the courts of several states." Commissioners' Prefatory Note to UCCJA, 9 U.L.A. at 111. To avoid jurisdictional conflicts and the accompanying trauma they inflict on the parties, especially the children, UCCJA urges that one state, albeit with help from others, should determine the issue of custody. UCCJA § 1, N.J.S.A. 2A:34-29.
While UCCJA focuses on custody disputes between family members, its operative provisions are broad enough to include a dispute between a natural parent and adoptive parents. A "custody proceeding" is defined to include a proceeding "in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." UCCJA § 2(3), N.J.S.A. 2A:34-30(c). Furthermore, custody proceedings include habeas corpus *608 actions and other proceedings under state law to determine custody. See Slidell v. Valentine, Iowa, 298 N.W.2d 599, 601 (1980); UCCJA § 2, Commissioners' Note, 9 U.L.A. 120 (1979). Cf. Oregon ex rel. Butler v. Morgan, 34 Or. App. 393, 395, 578 P.2d 814, 815 (1978) (habeas corpus appropriate to enforce child custody determination). We conclude that the Ohio habeas corpus decree is included within the operative provisions of UCCJA.
At the time of our decision in Borys, the Legislature was considering, but had not enacted, UCCJA. That decision, like UCCJA and PKPA, sought to strike a balance between certainty in the enforcement of custody decrees and the desire to act in the best interest of the child. In the interim, the Legislature has enacted UCCJA, which takes a different approach to interstate custody disputes from that contained in Borys.
Section 3 of UCCJA strikes its balance by setting definite standards and establishing alternative bases for jurisdiction. UCCJA § 3, N.J.S.A. 2A:34-31. Succinctly stated, the four bases of jurisdiction are: (1) the forum is or has been within six months of the proceeding "the home state" of the child[5]; (2) it is in the best interest of the child to proceed in the forum state because the child and family have a "significant connection" to the forum[6]; (3) the child is present in the jurisdiction and is *609 abandoned or threatened with harm ("parens patriae jurisdiction")[7]; or (4) no other state has jurisdiction and it is in the best interest of the child that the forum entertain the dispute.[8]
The first two bases, "home state" and "significant connection" jurisdiction, are the major sources of a court's power to act in an interstate custody dispute. UCCJA § 3, Commissioners' Note, 9 U.L.A. at 123. The courts of the child's home state have jurisdiction, but if there is no home state or if the child and his family have equal or stronger ties with another state, the courts in the latter state have jurisdiction under UCCJA. Id. Some courts and commentators have interpreted section 3 as establishing a priority for home state jurisdiction. See Warman v. Warman, ___ Pa.Super. ___, ___, 439 A.2d 1203, 1209-11 (Super.Ct. 1982); Katz, Child Snatching: The Legal Response to the Abduction of Children, 36-37 (1981). Significant contact jurisdiction, however, "comes into play either when the home state test cannot be met or as an alternative to that test." UCCJA § 3, Commissioners' Note, 9 U.L.A. at 123. Thus, the home state and significant contact tests may produce concurrent jurisdiction in two or more states. In those circumstances, sections 6 and 7 of UCCJA determine the appropriate state to decide custody. See UCCJA § 3, Commissioners' Note, 9 U.L.A. at 123. Although section 6 of UCCJA gives precedence to the action *610 filed first in time, N.J.S.A. 2A:34-34,[9] section 7 permits a court to decline jurisdiction if it determines it is an "inconvenient forum" because there is a closer connection with or substantial evidence in another state." N.J.S.A. 2A:34-35.
Accordingly, we conclude that UCCJA does not contemplate blind obedience to home state jurisdiction. The state to decide a child custody dispute is not necessarily the home state, but the one best positioned to make the decision based on the best interest of the child. See UCCJA § 1(3), N.J.S.A. 2A:34-29(c); Commissioners' Prefatory Note to UCCJA, 9 U.L.A. at 114. Often the home state will also be the state with the most significant contacts with the child. UCCJA, however, rejects a rigid rule vesting jurisdiction automatically in the home state and favors, instead, a more flexible approach. See Foster & Freed, "Child Snatching and Custodial Fights: The Case for the Uniform Child Custody Jurisdiction Act," 28 Hast.L.J. 1011, 1020 (1977).
Thus construed, UCCJA differs from PKPA, which creates a clear priority for the home state. 28 U.S.C.A. § 1738A(c)(2)(A). Under PKPA, jurisdiction may be based on significant contacts only if no state qualifies as the home state. Id. at (2)(B).[10] While PKPA creates a preference for the home state under federal law, it does not significantly disrupt the jurisdictional provisions of UCCJA. PKPA permits a home state to defer jurisdiction to another state on the ground that the other is a *611 more appropriate forum. 28 U.S.C.A. § 1738A(c)(2)(D). In making that determination, the relevant factors are those that UCCJA enumerates as relevant in making a determination of inconvenient forum. UCCJA § 7, N.J.S.A. 2A:34-35. Those factors are, among others:
(1) if another state is or recently was the child's home state; (2) if another state has a closer connection with the child and his family or with the child and one or more of the contestants; (3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; (4) if the parties have agreed on another forum which is no less appropriate; and (5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this act.
A custody dispute is more than a jurisdictional chess game in which winning depends on compliance with predetermined rules of play. A child is not a pawn. In exercising its discretion within the confines of UCCJA and PKPA, a court should consider not only the literal wording of the statutes but their purpose: to define and stabilize the right to custody in the best interest of the child.
PKPA and UCCJA also share a common goal of limiting the ability of sister-states to modify custody decrees. Both statutes permit modification only if the forum has jurisdiction and the rendering state has lost jurisdiction or has declined to exercise it. Compare 28 U.S.C.A. § 1738A(f) with UCCJA § 14(a), N.J.S.A. 2A:34-42(a). To the extent jurisdiction continued in Ohio, if at all, the Ohio courts declined to exercise it by refusing to hold a best interest hearing. Because the child and adoptive parents resided in New Jersey for almost a year before commencing the New Jersey action, New Jersey was both the home state and the state with the most significant contacts to the controversy. Thus, under both PKPA and UCCJA, New Jersey could modify the Ohio writ.
Both statutes define and limit the discretion of courts in recognizing sister-state decrees. Both restrict the jurisdiction to modify decrees of other states and remove, in many instances, the presence of the child as the sole basis for jurisdiction. *612 Nevertheless, like Borys, the statutes continue to recognize the crucial importance of considering the best interest of a child in an interstate custody dispute.
In retrospect, the Chancery Division would have been well advised to communicate with the courts in Ohio to determine whether Ohio courts expressly declined jurisdiction. In this case, however, the failure to communicate is understandable and excusable. PKPA was not in effect on December 1, 1980, when the Chancery Division decided that it had jurisdiction to conduct a best interest hearing, and UCCJA does not require communication with a sister-state that has declined to assume jurisdiction. See UCCJA § 6, N.J.S.A. 2A:34-34. Thus, the Chancery Division should not be criticized for the failure to communicate with the Ohio courts. In future cases, when there is doubt whether a sister-state has continuing jurisdiction or has declined to exercise it, the better practice would be to communicate with the courts of the sister-state. This interstate cooperation comports with the purposes of both statutes and assures a cooperative effort to achieve the best result for the child. See Bowden v. Bowden, 182 N.J. Super. 307, 314-15 (App.Div. 1982).
The judgment of the Appellate Division is affirmed.
For affirmance  Chief Justice WILENTZ, and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN  7.
For reversal  None.
NOTES
[1] Other sections of PKPA amend the Social Security Act to provide for a parent locator service, Pub.L.No. 96-611, § 9, 94 Stat. 3571 (amending various sections of 42 U.S.C.A.), and explicitly apply the Fugitive Felon Act to parental kidnapping. Pub.L.No. 96-611, § 10, 94 Stat. 3573.
[2] A child custody determination is a "judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications." 28 U.S.C.A. § 1738A(b)(3).
[3] A child custody determination is made consistently with the Act if:

(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
[28 U.S.C.A. § 1738A(c)]
[4] Although not raised by the parties, a question exists concerning the effective date of 28 U.S.C.A. § 1738A. In section 2 of Pub.L.No. 96-611 it states: "The amendments made by this Act shall take effect on, and apply to services furnished on or after July 1, 1981." This issue has caused courts some difficulty. See Kumar v. Santa Clara County Superior Court, 124 Cal. App.3d 1003, 177 Cal. Rptr. 763, 767 n. 9 (1981) (date on which PKPA became effective subject to doubt); State ex rel. Valles v. Brown, N.M., 639 P.2d 1181, 1183 (1981) (although Act might appear to be effective July 1, 1981, court finds PKPA is effective when enacted); Bahr v. Bahr, 110 Misc.2d 665, 442 N.Y.S.2d 687 (Fam.Ct. 1981) (applying PKPA to decision rendered May 8, 1981); In Re Custody of Ross, 291 Or. 263, 630 P.2d 353, 362 n. 19 (1981) (PKPA effective Dec. 28, 1980).
[5] UCCJA § 3(a)(1), N.J.S.A. 2A:34-31(a)(1).

"Home state" means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period. [UCCJA § 2(5), N.J.S.A. 2A:34-30(e).] Compare 28 U.S.C.A. § 1738A(b)(4).
[6] UCCJA § 3(a)(2), N.J.S.A. 2A:34-31(a)(2), which provide:

It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships.
[7] UCCJA § 3(a)(3), N.J.S.A. 2A:34-31(a)(3), which provide:

The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected.
[8] UCCJA § 3(a)(4), N.J.S.A. 2A:34-31(a)(4), which provide:

(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
[9] UCCJA § 6, N.J.S.A. 2A:34-34 provide in part:

A court of this State shall not exercise its jurisdiction under this act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this act, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.
[10] Like the UCCJA, PKPA provides for jurisdiction based on an emergency or if no State has jurisdiction and it is in the best interest of the child that the forum assume jurisdiction. Compare 28 U.S.C.A. § 1738A(c)(2)(C) & (D) with UCCJA § 3(a)(3) & (4), N.J.S.A. 2A:34-31(a)(3) & (4).