Horace Paul HOUTCHENS

v.

Tammy Lee' HOUTCHENS.

No. 82–461–M.P.

Supreme Court of Rhode Island.

March 6, 1985.

Ira L. Schreiber, William L. Bernstein, Schreiber Law Associates, Providence, for petitioner.

Kathleen Managhan/Joseph T. Houlihan, Corcoran Peckham & Hayes, Newport, for respondent.

## OPINION

SHEA, Justice.

This is a petition for a writ of certiorari that brings before us an interlocutory ruling in a Family Court case involving child custody. The mother seeks review of a Family Court order awarding the parties temporary joint custody of the minor children with physical possession in the father. Although certiorari does not ordinarily lie where the petition seeks review of an interlocutory order, under the recognized exceptions, we granted the mother's petition on December 30, 1982.

■ The Houtchens were married in Newport, Rhode Island, on October 1, 1977, and moved almost immediately to the State of Texas where they resided until 1982. The move to Texas resulted primarily from the father's desire to continue his education at Texas Tech. Two children were born of the marriage. Their ages at the time of hearing were three and a half and one. While the family lived in Texas, marital discord developed; as a consequence the father took the children without the consent of the mother back to Middletown, Rhode Island, where his mother and relatives reside. Approximately two weeks after returning to Rhode Island, the father filed a complaint for separate maintenance without commencement of divorce proceedings along with motions for temporary support and custody of the two children. The mother was properly served and proceeded to Rhode Island, appearing specially to contest the jurisdiction of the Rhode Island Family Court. She based her objection to this state's taking jurisdiction on the fact that there were prior custody proceedings pending in Lubbock County, Texas, which proceedings, she argued, were entitled to

recognition under the Uniform Child Custody Jurisdiction Act. In addition to her motion to dismiss on jurisdictional grounds filed in the Family Court, Newport County, she also filed a motion for temporary support and custody. The filing of this motion conferred personal jurisdiction on the Family Court if it was ever in doubt.

Following a hearing on September 7, 1982, an order was entered on September 20, 1982, and affirmed on October 4, 1982, denying the mother's motion to dismiss and granting temporary joint custody of the minor children with physical possession in the father. Both parties were restrained and enjoined from removing the children from the State of Rhode Island. The matter was continued to December 14, 1982, pending referral to the Department of Children and Their Families and to the Family Court Investigative Unit for a review of the living conditions of the father and mother and their respective abilities to care for the minor children.

While the case was pending before the Rhode Island court, the mother was granted an ex-parte divorce on November 23, 1982, by the 137th District Court of Lubbock County, Texas. In that proceeding she was appointed managing conservator of the two children. She then traveled to Middletown, covertly removed the children, and returned to Texas. On December 14, 1982, the mother was found by the Family Court to be in willful contempt of the prior order of the Rhode Island Family Court, which prohibited the removal of the children from the state. She was ordered to return the children forthwith. Of his own accord, the father traveled to Texas, took possession of the children, and returned with them to Rhode Island. This petition followed.

The mother has argued vigorously that the Uniform Child Custody Jurisdiction Act (UCCJA), G.L.1956 (1981 Reenactment) chapter 14 of title 15, is controlling and deprives the Rhode Island court of jurisdiction over this case. Before considering the

merits of petitioner's claim, we are constrained to comment that in our opinion, the conduct of these parties, not one any more than the other, is less than justified, is detrimental to the best interests of their children, and is in direct contravention of the legislative purposes of the very act under which the mother now seeks relief. *See Pratt v. Pratt,* R.I., 431 A.2d 405 (1981) for a concise analysis of the legislative history of the UCCJA as enacted in Rhode Island by P.L.1978, ch. 185, § 1; *see also* Uniform Child Custody Jurisdiction Act, 9 U.L.A. 111–170 (1979).

One of the major purposes of the act, as stated in § 15–14–2(a)(3), is

"[to] assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state[.]"

This court has had only three occasions to interpret the provisions of the UCCJA since its adoption in Rhode Island in 1978. In all three cases, the parties were before the court on appeal from denials of their motions to modify foreign decrees under the criteria governing modification set forth in §§ 15–14–14 and 15–14–15; and in each instance, it was found that the exercise of jurisdiction by the Rhode Island Family Court was improper. *See Terrill v. Terrill,* R.I., 431 A.2d 1194 (1981) (where Missouri court had jurisdiction over the parties and mother improperly removed child from Missouri, Family Court should not exercise its jurisdiction to modify Missouri decree); *Pratt v. Pratt,* R.I., 431 A.2d 405 (1981) (where Iowa was more appropriate forum and its exercise of jurisdiction was substantially in accordance with Rhode Island statutory provisions); *Paolino v. Paolino,* R.I., 420 A.2d 830 (1980) (where Pennsylvania, the residence of the respon-

dent, or Massachusetts, the divorcing state, was the more appropriate forum to resolve the controversy).

Where initial jurisdiction is at issue, the criterion set forth in § 15–14–4(a), particularly subsections (1) and (2), is controlling.

"Jurisdiction.—(a) The family court has jurisdiction to make a child custody determination by initial or modification decree if:

(1) the state of Rhode Island (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from Rhode Island because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in Rhode Island; or

(2) it is in the best interest of the child that the family court assume jurisdiction because (i) the child and his parents, or the child and at least one (1) party, have significant connection with Rhode Island, and (ii) there is available in Rhode Island substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]"

By these terms, a court acquires jurisdiction under the UCCJA if it meets the "home state" or "significant connections" tests of section 4. It is clear that these criteria provide a trial justice with considerable latitude in determining the existence and exercise of jurisdiction.

In the instant case, the Family Court made the following finding:

"[I]t is in the best interest of the two minor children that the plaintiff in this petition as well as the maternal grandparents and the paternal grandparents and the minor children are in the State of Rhode Island, the best interest of the children will be best served in the maximum degree of contacts being in the State of Rhode Island."

■ The father and his two minor children had resided in Rhode Island for approximately two months prior to the hearing in Family Court. All three lived with the paternal grandmother, who cared for the children while the father worked. The older child was registered in nursery school. The mother had relinquished her lease on the Texas apartment and was equivocal about her plans to return to that state. These facts are sufficient to constitute a significant connection of the father and the children to Rhode Island.

■ In addition, substantial evidence of the children's present and future welfare is available in this jurisdiction. At the hearing, the father alleged that "[the children] weren't being taken care of. She never cooked for them, never fed them." There were further allegations by the father of drugs being brought into the home by a male friend of his wife and intimations of infidelity occurring in the home when the children were present. Most of these allegations were denied by the mother. After hearing testimony, the Family Court took appropriate steps to investigate the father's allegations concerning the welfare of the children by ordering the Department of Children and Their Families and its counterpart to conduct home studies. This evidence is all relevant to the children's present and future care, protection, training, and personal relationships. Since Rhode Island was in the best position to investigate the facts, it follows that the Family Court had the most "significant connections" with the parties and was the best qualified to take jurisdiction under § 15–14–4(a)(2).

The mother places much emphasis on the fact that Texas had been the children's home state for at least six months prior to commencement of the proceedings in Rhode Island and that the children's presence in Rhode Island was due only to the father's unilateral removal of the children from Texas a few weeks prior to his filing the complaint. If the trial court and this court were compelled by statute to award

jurisdiction to the so-called home state as set forth in § 15–14–4(a)(1) and defined by § 15–14–3(6), it is clear that the Texas court had jurisdiction under the "home state" rule. The framers of the UCCJA, however, recognized the inequities of attaching a rigid, mechanical rule establishing jurisdiction exclusively in the "home state." The six-month period provided in section 3 was offered more as a general rule of thumb as an appropriate period for a child to become integrated into a community rather than as a strict rule of construction. Uniform Child Custody Jurisdiction Act § 3 Commissioners' Note, 9 U.L.A. 123 (1979).

■ The New Jersey Supreme Court was recently confronted with a similar question in *E.E.B. v. D.A.*, 89 N.J. 595, 610, 446 A.2d 871, 879 (1982). There the court held:

"[W]e conclude that UCCJA does not contemplate blind obedience to home state jurisdiction. The state to decide a child custody dispute is not necessarily the home state, but the one best positioned to make the decision based on the best interest of the child." *Id.*

We adopt the position taken in *E.E.B.* We also reject a rigid application of the "home state" test in favor of a more flexible approach, especially where the welfare of young children is at stake. Accordingly, on the facts before us, we think there is a sufficient basis for the Family Court's assumption of jurisdiction.

■ Even if the exercise of jurisdiction was proper in the first instance, the mother argues that the UCCJA, particularly § 15–14–9(a), requires that our court decline jurisdiction by reason of the father's conduct. That section reads:

"If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances."

Notwithstanding our prior admonition, we do not think the conduct of the father in this case rises to the level of reprehensibility. Although his actions may have been wrongful, his conduct stemmed from the sincere belief that his acts were necessary to protect the well-being of the children. Two days after his return to Rhode Island with the children, he traveled back to the State of Texas in an attempt to work out his differences with his wife. His efforts were rebuffed. We do not find this to be a situation in which a petitioner snatches the children and roams the country on a jurisdictional fishing expedition "with children as bait." *Spaulding v. Spaulding*, 460 A.2d 1360, 1363 (Me.1983) (quoting *Wheeler v. District Court*, 186 Colo. 218, 220, 526 P.2d 658, 660 (1974)). Our decision might be otherwise if that were the case. Nor is this a situation in which one party improperly removes a child to another jurisdiction in violation of a custody decree of another state. *Terrill v. Terrill*, R.I., 431 A.2d 1194 (1981); § 15–14–9(b). We note the Family Court's ruling in this respect that

> "[t]he Court finds as a fact there has been no kidnapping in this particular case pending before it today. There is no outstanding decree or order from any other court that either party, more specifically Horace Paul Houtchens, has violated, that he is in fact the father of the two children and his rights are equal with the mother, Tammy Lee Houtchens. There is no outstanding order that the parties have related."

The reference in the judge's ruling to a foreign decree relates to the mother's final argument that the father had actual knowledge of the pendency of a proceeding involving the custody of these children in Texas. An order for substituted service filed in the 137th District Court for Lubbock County, Texas, on July 23, 1982 was received into evidence by the Rhode Island Family Court at the hearing on September 7, 1982. The mother argues that the UCCJA, presumably § 15–14–7(a) although not specifically cited, requires that our court recognize and defer to the jurisdiction of a sister state that has properly assumed jurisdiction under laws in accordance with the provisions of the UCCJA. Section 15–14–7(a) reads:

> "The family court shall not exercise its jurisdiction under this chapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this chapter * * *."

We note that although Texas has not adopted the UCCJA, the Texas Family Code contains provisions that will accomplish some of the act's major objectives in a different manner. *See* Tex.Fam.Code Ann. §§ 14.01 through 14.10 (Vernon 1975); *see also Perry v. Ponder*, 604 S.W.2d 306 (Tex. Civ.App.1980). In accepting jurisdiction, we can only assume that the Texas judge followed the provisions of the code. At the time it accepted jurisdiction, no other state provided a superior forum. The mother had remained in Texas, the state in which the parties had lived together for five years before the father left with the children. If we followed the priority-in-time rule, we would be persuaded that Texas's jurisdiction over the matter is superior to that of the Rhode Island Family Court. Uniform Child Custody Jurisdiction Act § 6 Commissioners' Note, 9 U.L.A. 135 (1979); *accord, Peterson v. Peterson*, 464 A.2d 202 (Me. 1983); *Potter v. Potter*, 104 Misc.2d 930, 430 N.Y.S.2d 201 (1980). However, at the time of the filing of the complaint in Rhode Island, the father had no notice of the pendency of proceedings in Texas. Texas's exercise of jurisdiction was therefore not in substantial conformity with the due-process requirements of notice and opportunity to be heard contained in § 15–14–5 [Tex. Civ.Proc. Rule 108]. For the record, the Rhode Island Family Court indicated that in accordance with an affidavit filed by the father pursuant to the mandates of § 15–14–10, which requires disclosure by the affiant under oath of any knowledge concerning the existence of any pending custody proceeding in another state,

"[there was] no actual service to Horace Paul Houtchens of the pending matter in the State of Texas. Pursuant to the affidavit filed today and the affidavit in support of the motion for substitutive services filed in District Clerk's Office in Lubbock County on July 23 that in fact the address was known to the plaintiff in that matter, service could have been effectuated on the defendant in that matter, namely, Horace Paul Houtchens, 32 Continental Drive, Middletown, Rhode Island."

According to the father's affidavit, "at the time of the filing of my complaint in this case, I was not aware of any custody proceedings pending in a court in this State or in any other state. However, that since the filing of this complaint and after a hearing on September 7, 1982 in the Newport County Family Court, I was served with papers filed by my wife in the 137th District Court for Lubbock County, Texas." Neither the transcript nor the exhibits indicate otherwise. There is nothing in the record that would establish conclusively that substituted service was ever effectuated prior to the father's filing of his complaint. Absent any proof to the contrary, we conclude that it was proper under § 15–14–7(a) for the Rhode Island Family Court to exercise jurisdiction.

For the reasons stated, the petition for certiorari is denied and dismissed, the writ previously issued is quashed, and the order of the Family Court is affirmed. Since the order we have affirmed is interlocutory, we remand the case to the Family Court. That court must consider, within the provisions of § 15–14–7(c), the validity of continuing to exercise its jurisdiction over the issues before it vis-a-vis the action of the 137th District Court of Lubbock County, Texas, having exercised its jurisdiction in granting a decree of divorce and custody. In analyzing this situation, the Rhode Island Family Court must consider whether the jurisdiction of the Texas court was validly exercised after the mother had submitted herself to the jurisdiction of the Rhode Island Family Court and whether there was valid service on the father.