not raised below nor was it delineated as such as required by *R.* 2:6-2. Rodriguez urges for the first time on appeal that by feeding stray dogs Cordasco has maintained an "unreasonable" condition on her real property. Since it was not raised below, we need not address the issue. *R.* 2:10-2.

Rodriguez acknowledges that under current New Jersey law, residential property owners cannot be held liable for defects in the abutting sidewalk absent negligent construction or repair of it. *See Borges v. Hamed,* 247 *N.J.Super.* 295, 589 *A.*2d 169 (App.Div.1991), *affirming* 247 *N.J.Super.* 353, 589 *A.*2d 199 (Law Div.1990) (refusing to impose sidewalk liability on owner of three-family house where two of three apartments were occupied by family members, because it was not a "commercial property"); *Stewart v. 104 Wallace St., Inc.,* 87 *N.J.* 146, 432 *A.*2d 881 (1981).

Nevertheless, Rodriguez argues that we should extend the *Stewart* rule to residential landowners. This court is bound by the decisions of our Supreme Court. Such a drastic change in the law is a matter for that Court or the Legislature and we decline the invitation to institute a change in established law.

Affirmed.

652 A.2d 1254

D.B., PLAINTIFF–APPELLANT, v. R.B., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 10, 1995—Decided February 6, 1995.

406

Before Judges PRESSLER, LANDAU and CONLEY.

*Theodore R. Bohn* argued the cause for appellant (*Mr. Bohn* on the brief).

*R.B.* argued the cause *pro se* (*Mr. B.* filed a *pro se* brief).

*Marsha Wenk,* Legal Director, submitted a brief on behalf of *amicus curiae,* American Civil Liberties Union of New Jersey.

The opinion of the court was delivered by

CONLEY, J.A.D.

This appeal arises from the trial judge's exercise of his discretion to decline original jurisdiction over the parties' custody dispute concerning their four-year-old child in favor of the exercise of original jurisdiction by the Virginia courts. We affirm.

Although complicated to some extent by an investigation in Virginia of a claim of sexual abuse involving the child and her mother and the mother's recently disclosed lesbianism, the critical jurisdictional facts are not difficult. The parties were married in New York in 1987. They moved to New Jersey in 1989. The child was born on October 20, 1989. In the fall of 1992, the parties agreed to separate and agreed to joint legal and physical custody of the child. *Beck v. Beck,* 86 *N.J.* 480, 487–88, 432 *A.*2d 63 (1981). Defendant was going to live in Virginia. A written separation agreement was signed December 7, 1992. Pursuant thereto, the child was to reside with defendant from January 1, 1993 to June 30, 1993 and thereafter with plaintiff from July 1, 1993 to December 31, 1993. Her residency would then be reevaluated. There was a factual dispute as to when defendant actually left New Jersey and began to reside in Virginia with the child. Both parties provided testimony; plaintiff asserted the date was December 12, 1992, defendant claimed November 2, 1992. The trial judge resolved that dispute and found that defendant left New Jersey with the child on November 2, 1992, although he returned

briefly in the middle of November to allow visitation with plaintiff during Thanksgiving.[1]

Plaintiff visited the child in Virginia over the Memorial Day weekend. Following that visit, on June 1, 1993 defendant filed a custody complaint in the Virginia Juvenile and Domestic Relations District Court. On June 11, 1993, plaintiff filed a divorce complaint in New Jersey, with a notice of motion for pendente lite relief seeking custody.[2] In opposition thereto, defendant filed a cross-motion to dismiss the custody matter on jurisdictional grounds. The jurisdiction issue was heard on August 6, 1993 during which proceeding both parties testified.

Both New Jersey and Virginia have adopted the Uniform Child Custody Jurisdiction Act and pursuant thereto the trial judge conferred with the Virginia Juvenile and Domestic Relations District Court judge both before and after the proceeding. See *N.J.S.A.* 2A:34–34; *N.J.S.A.* 2A:34–35; *Benda v. Benda*, 236 *N.J.Super.* 365, 565 *A.*2d 1121 (App.Div.1989). Although we cannot tell from the record what the substance of these discussions was, the outcome was an agreement that New Jersey would defer to Virginia's jurisdiction. In so concluding, the trial judge said:

> The primary legislative purpose of the Uniform Child Custody Jurisdiction Act is to assure that litigation concerning the custody of a child takes place ordinarily in the state within which the child and his family have the closest connection and where significant evidence concerning his care, protection, training and personal relationships is most readily available, and that Courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state. See *Neger v. Neger*, 93 *N.J.* 15 [459 *A.*2d 628], 1983. In the case at bar, the child has been attending school in Virginia and is in therapy in Virginia. There is currently an investigation ongoing in Virginia as to the allegations of

---

[1] Pursuant to our order, plaintiff was permitted to supplement the record with copies of attendance records of the day care facility in New Jersey which the child had attended. She claimed the records showed that the child did not leave New Jersey until December 12, 1992. We have reviewed these records. They show attendance only on November 18, 19, 23, 24 and 25, not inconsistent with the judge's findings.

[2] Aside from the issue of custody, the parties have settled the divorce issues and a judgment of divorce has been entered.

sexual abuse against the child.[3]  Additionally, it is the intent of the plaintiff to relocate to the State of New York within a short period of time.  At the present time there is a minimum connection between the State of New Jersey and the child for determining the issue of custody.

The Court further finds that it was the parties' expressed intent, pursuant to their Separation Agreement, that the child reside equally with both parents an equal period of time in Virginia and an equal period of time, not necessarily in the State of New Jersey.

This Court further finds that it is in the best interest of the State of Virginia to hear this case as more significant evidence is available to the courts of Virginia to make the appropriate findings as to the best interest of this child.  The child is currently in school in Virginia and is currently in therapy in the State of Virginia. See *N.J.S.A.* 2A:34–31.  Additionally, Virginia can be said to be the home state of this child at the time of the commencement of both the New Jersey and Virginia proceeding.  This court specifically finds no wrongful conduct on behalf of the Defendant herein with respect to holding the child in Virginia pending the outcome of various litigation.

An order declining jurisdiction was entered August 23, 1993. Although we have not been fully advised as to the proceedings in Virginia, it is evident that the jurisdictional issue, including a claim of lack of *in personam* jurisdiction, was resolved against plaintiff. It further appears that in September 1993 plaintiff's Virginia counsel filed a motion "for a new trial relative to the matter of jurisdiction."  We were told during oral argument that presently all of the jurisdictional issues raised by plaintiff have been resolved and the entire custody issue is now proceeding *de novo* in a Virginia court of record.[4]  Plaintiff states in her brief that custody was awarded defendant in August 26, 1994.

Meanwhile, in New Jersey, plaintiff's motion for reconsideration was denied on November 16, 1993.  In his written decision, the trial judge said:

---

[3] Subsequent to the trial judge's decision, the Virginia Department of Social Services terminated its investigation, concluding "sexual abuse suspected, perpetrator unknown."  It further concluded that the claim that plaintiff was the abuser was unfounded.

[4] We are told the initial custody proceedings in the Virginia Juvenile and Domestic Relations District Court were not recorded since that court is "not a Court of record."  *See Va.Code* § 16.1–69.5.

... this Court has conferred with Judge Hoover of the Domestic Relations Court in Virginia. He informed this Court that the Motion for Reconsideration was disposed of several weeks ago and that that motion was denied.

After reviewing all of the Affidavits and Arguments by legal counsel, this Court determines that the Motion for Reconsideration will be dismissed. This Court did not overlook any of the facts or circumstances, as they existed at the time, in making its determination that jurisdiction was appropriately within the State of Virginia.

Almost a year has now passed since the child first went to Virginia and many of the reasons upon which the decision was initially based at the time still exist. Although this Court admits that facts have changed, somewhat, this Court finds that jurisdiction is appropriately within the State of Virginia. Consequently, Plaintiff's Motion for Rehearing or Reconsideration seeking to amend an Order is hereby dismissed.

■ Under the particular circumstances here, we cannot conclude that the trial judge abused his discretion in declining jurisdiction and denying plaintiff's motion for reconsideration. At the heart of plaintiff's contention that he did is her claim that if Virginia obtained jurisdiction, it was only through defendant's "misconduct" in taking and then keeping the child in Virginia.

But the fact is the parties agreed to an equal, joint custody arrangement envisioning two separate residential jurisdictions for the child. This is not a "child-snatching" case. *Compare Stevens v. Stevens,* 177 *N.J.Super.* 167, 425 *A.*2d 1081 (App.Div.1981) *with Marcrum v. Marcrum,* 181 *N.J.Super.* 361, 437 *A.*2d 725 (App.Div. 1981), *appeal dismissed* 93 *N.J.* 232, 460 *A.*2d 645 (1982). Neither is it a situation of a failure of a parent to return a child to his or her residence following visitation in another state. *Compare Pozzi v. Pozzi,* 210 *N.J.Super.* 522, 510 *A.*2d 123 (Ch.Div.1986) and *Middleton v. Middleton,* 227 *Va.* 82, 314 *S.E.*2d 362, 369 (1984). The parties consented to the establishment of two separate places of residence for the child and consented to the child's removal to Virginia in November 1992. *See Bowden v. Bowden,* 182 *N.J.Super.* 307, 311–12, 440 *A.*2d 1160 (App.Div.1982). Moreover, at the time defendant filed his Virginia action, the initial six-month residency in Virginia under the written agreement was still in effect, although he and the child had lived there for a little more

than six months. There was, thus, ample basis for the trial judge's conclusion that defendant had not engaged in misconduct.

Virginia, then, was correctly considered by both judges to be the child's "home state"[5] at the time of the initial Virginia filing. We recognize, however, that the designation of one state as "home state" is not necessarily dispositive. *See Neger v. Neger*, 93 *N.J.* 15, 28, 459 A.2d 628 (1983) ("Although more than one state may potentially have initial jurisdiction, the litigation involving original jurisdiction should ordinarily commence in the state with which the child and his family have the closest connection and where significant evidence concerning the welfare of the child is more readily available."); *E.E.B. v. D.A.*, 89 *N.J.* 595, 609, 446 A.2d 871 (1982), *cert. denied sub nom*, 459 *U.S.* 1210, 103 *S.Ct.* 1203, 75 *L.Ed.*2d 445 (1983) ("[t]he courts of the child's home state have jurisdiction, but if there is no home state or if the child and his family have equal or stronger ties with another state, the courts in the latter state have jurisdiction under the UCCJA"); *N.J.S.A.* 2A:34–34, –29(c). *But see Matter of Adoption of Child by T.W.C.*, 270 *N.J.Super.* 225, 233, 636 A.2d 1083 (App.Div.1994) ("while the UCCJA permits jurisdiction to be exercised by the 'home state' *or* a state having a 'significant connection' with the child or one of the contestants, *N.J.S.A.* 2A:34–31, the PKPA [Parental Kidnapping Prevention Act] allows 'significant connection' jurisdiction only if no state qualifies as the home state. . . . The jurisdictional requirements of the PKPA, of course, preempt those of the UCCJA if the acts are in conflict.").

In *T.W.C.*, we observed that more than one state may be regarded as having sufficient connection with the parent and child to support its own original jurisdiction. *Id.* at 236, 636 A.2d 1083. But we also noted that "neither the UCCJA nor the PKPA requires that one state's 'substantial contacts' be weighed against

---

[5] As defined by the UCCJA, home state means "the state in which the child immediately preceding the time involved lived with . . . a parent . . . for at least 6 consecutive months . . . Periods of temporary absence . . . are counted as part of the 6–month or other period."

another state's 'substantial contacts' in order to entrust a single state with jurisdiction.... More than one state may have connections sufficient to support original jurisdiction; the PKPA specifically contemplates that possibility, prohibiting a state from exercising jurisdiction where another state 'is exercising jurisdiction consistently with the provisions [of the PKPA].'" *Ibid.;* 28 *U.S.C.A.* § 1738A(g).

Regardless of the home state issue, then, and assuming the trial court could have exercised original jurisdiction, the UCCJA accords the trial court the discretion to decline jurisdiction if it finds another state to be a more appropriate forum. *N.J.S.A.* 2A:34–31a(4)(i), –35; 28 *U.S.C.A.* § 1738A(c)(2)(D); *E.E.B., supra,* 89 *N.J.* at 610–12, 446 *A.*2d 871. As we have previously said, Virginia was the home state at the time defendant filed his custody proceeding as the trial judge found. But even if not, the trial judge considered the child's connection with Virginia and found it to be substantial. That conclusion is rationally premised upon the particular facts here. Although unquestionably New Jersey has had a close connection with the child and the parties, Virginia is the child's most recent residence where "substantial evidence concerning the child's present or future care, protection, training and personal relationships is more readily available." *N.J.S.A.* 2A:34–35c(3).

We have carefully considered plaintiff's various contentions. We reject them but briefly address the contentions concerning "emergent jurisdiction" and whether Virginia's exercise of jurisdiction is consistent with the UCCJA.

As to the first, plaintiff contends that Virginia's initial exercise of jurisdiction was predicated upon the "emergent circumstances" exception to the UCCJA arising from the sexual abuse allegation. *See N.J.S.A.* 2A:34–31a(3)(ii); *Va.Code,* § 20–126(A)(3)(ii). Thus, claims plaintiff, when the investigation of that allegation was terminated, that jurisdiction ceased.

■ There is no question that emergent jurisdiction under the UCCJA can only be temporary and would not have continued after the completion of the Department of Social Services' investigation. But nowhere does the record reveal that that was the basis for the Virginia court's exercise of jurisdiction. Indeed, the original pleading appears to be a straightforward petition for custody. There is no reference to any emergent circumstances. And, as we have previously concluded, the trial judge correctly determined that Virginia was a "home state" at the time that petition was filed.

■ This conclusion resolves, as well, plaintiff's additional contention that Virginia could not properly exercise jurisdiction under the UCCJA consistent with the Act. *See N.J.S.A.* 2A:34–34; 28 *U.S.C.A.* § 1738A(d). In this regard, plaintiff claims Virginia had neither subject matter jurisdiction nor *in personam* jurisdiction over plaintiff. She has unsuccessfully raised these issues in the Virginia courts and asks us to reach a different view. Because Virginia is a "home state" and, further, has substantial connection with the child and defendant, it has subject matter jurisdiction. As to *in personam* jurisdiction, although plaintiff disputes ever being properly served and contends the summons is defective because it contains an incorrect address, she has appeared throughout the Virginia proceedings and has been fully represented by counsel in those proceedings. It is evident plaintiff has received "actual notice" of the proceeding. *N.J.S.A.* 2A:34–33; *Va.Code* § 20–128. *See Middleton v. Middleton, supra,* 227 *Va.* 82, 314 *S.E.*2d at 371 (England exercised jurisdiction substantially in conformity with the UCCJA even though complaint had not been served).

We are not insensitive to plaintiff's concerns relating to her particular sexual preference and its potential impact in the custody proceeding. But we reject the assertion that she will be any more or less at a risk in Virginia for having that sexual preference treated as a disqualifying factor *per se.* While Virginia considers as an important factor the moral climate in which a child is to be

414

raised, including a parent's sexual preference if substantially exposed to the child, *Roe v. Roe*, 228 *Va.* 722, 324 *S.E.*2d 691 (1985), it also recognizes that lesbianism is not a disqualifying factor *per se*. *See Doe v. Doe*, 222 *Va.* 736, 284 *S.E.*2d 799 (1981); *Bottoms v. Bottoms*, 444 *S.E.*2d 276 (Va.App.1994). It is the best interest of the child that is paramount in both states.

Affirmed.