165 N.J. Super. 591 (1979)
398 A.2d 937
IN THE MATTER OF THE ADOPTION OF A CHILD BY N.P. AND F.P.
Superior Court of New Jersey, Law Division, Probate Part, Union County.
January 12, 1979.
*592 Ms. Edythe S. Lichtblau, attorney for plaintiffs.
COLEMAN, J.S.C.
This adoption matter presents some interesting questions of first impression, to wit: (1) Has a New Jersey couple who retains an attorney in a foreign country to secure a child in that foreign country for placement in their New Jersey home for adoption acted as an intermediary in violation of N.J.S.A. 9:3-39? (2) Does the payment of money to a foreign attorney for legal and court expenses incurred in the foreign jurisdiction and the payment of transportation *593 expenses of the child and an escort to Kennedy Airport violate N.J.S.A. 9:3-54?[1]
This matter came before the court on the complaint for adoption filed on September 8, 1978. On December 7, 1978 a preliminary hearing was conducted pursuant to N.J.S.A. 9:3-48, since the child was not placed in the adoptive home by an approved agency as defined by N.J.S.A. 9:3-38(a). During the preliminary hearing the court raised several questions concerning the legality of the placement of the child and the payment of money to the foreign attorney and others. See In re Adoption by I.T. and K.T., 162 N.J. Super. 587 (Law Div. 1978), rev'd 164 N.J. Super. 476 (App. Div. 1978). The questions raised initially by the court with respect to the effects of illegality in the placement of a child must be resolved in favor of the adoptive parents. It is presently the law of this State that notwithstanding the fact that a child may be illegally placed for adoption (even acquired through the black market or gray market of babies), the statutes controlling the adoption of children do not preclude the finalization of adoptions. See I.T. and K.T., supra. Therefore, an order upon preliminary hearing will be entered in favor of plaintiffs. The purpose of the opinion is to outline the court's reasons for referring this case to the Union County Prosecutor in compliance with N.J.S.A. 9:3-55(b).
Based upon the report of the agency submitted pursuant to N.J.S.A. 9:3-48(a)(2), as well as the testimony of the plaintiffs, the court makes the following factual determination:
The child herein was born on March 30, 1978 in Santiago, Chile, South America. On March 30, 1978 the natural mother delivered custody of the child for adoption to the Maternity Clinical Hospital, Social Services, Chile University. The *594 prospective adoptive parents have no children born of their marriage. They read an article in the New York Daily News concerning children who were available for adoption from Chile. The article referred them to Pat Quinlan, who, in turn, referred the prospective adoptive parents to Father S., a priest of the Archdiocese of Rockville Center, New York. Father S. had a working relationship with Father G. in Chile. In March 1978 the prospective adoptive parents received a telephone call from Pat Quinlan who recommended a lawyer in Santiago, Chile, by the name of Don Eugenio Donoso. Several days later Pat Quinlan again called the prospective adoptive parents to advise that a child, born March 16, 1978, was available for adoption. The prospective adoptive parents forwarded to Donoso the necessary papers to obtain a visa to bring the child to the United States. On June 8, 1978 Donoso received approval from the Fourth Judge of Letters of Courts of Minor, Santiago, Chile, to have the child brought to the United States for the purpose of adoption by the prospective adoptive parents. On June 17, 1978 the child was brought into the United States by Maria Elena Ibarra, who was hired by Father G. to bring the child to Kennedy Airport in New York. The prospective adoptive parents met Maria Elena Iberra at Kennedy Airport and took custody of the child.
The plaintiffs expended the following monies in connection with receiving the child into their home: (a) $3,000 to Don Eugenio Donoso, attorney in Santiago, Chile; (b) $1,169 to Maria Elena Ibarra for plane fare for herself and the child, clothing and passport; (c) $72 to the Consulate of Chile for legalization of documents; (d) $50 for translations; (e) $150 to Mrs. Greenfield for a home study; (f) $625 to a New Jersey attorney for services in the Union County Court, Probate Division, in connection with the instant adoption.
Donoso further itemized the disbursement of the $3,000 he received as follows: $238.79 for foster home care; $27.41 for medicine; $16.13 for doctor's bill; $9.67 for pictures; *595 $158.85 for clothes during April 3 to June 12, 1978; $18 for notary on the power of attorney; $12.58 for legalization of the power of attorney and decision of the judge; $16.13 for tips to employees of the court; $16.13 for miscellaneous expenses; $500 for a donation to the Chile University Clinical Hospital, and $2,000 for attorney's fee.

I Plaintiffs as Intermediaries
The statute which proscribes the use of intermediaries is N.J.S.A. 9:3-39, and the pertinent language therein is:
No person * * * shall * * * materially assist in the placement of any child for adoption in New Jersey unless such person shall be the parent or guardian of the child * * * For the purposes of this section, material assistance in the placement of any child shall include, but shall not be limited to acting as an agent, finder or intermediary for or between any parent and any prospective parent or a person acting on behalf of either in connection with a placement for adoption of such parent's child.
The court is satisfied from the uncontradicted facts that the plaintiffs' participation in the placement of the child through unapproved intermediaries and agents create a prima facie showing of a violation of the statute. The above statute was intended to preclude potential adoptive parents and others from participating in the placement of children for adoption except as therein permitted. The statute is broad and comprehensive because the Legislature, for the benefit of the public and all concerned, intended to channel adoptions through approved agencies unless otherwise allowed by the statute. This broad legislative intent was designed to prohibit all persons, corporations or agencies from materially assisting in the placement of children for adoption, no matter how innocent or well-meaning they may be, including religious personalities, doctors, lawyers and other well-wishers, unless otherwise permitted by the statute. The legislative purpose was to prevent the trafficking in human lives for profit as in the "black market" in babies as well as the *596 "gray market" in babies. Plaintiffs' conduct may fall within the "gray market" category. State v. Wasserman, 75 N.J. Super. 480 (App. Div. 1962).
Plaintiffs were residing in Union County when they contacted Pat Quinlan and Father S. and when they directed information and money to the attorney in Chile for the purpose of having a child placed in their home for adoption. Plaintiffs performed their acts in New Jersey even though other acts were performed by other persons outside New Jersey and the United States. Under these uncontradicted facts plaintiffs acted as intermediaries while materially assisting foreign agents in the placement of the child in their home for adoption. State v. Segal, 78 N.J. Super. 273 (App. Div. 1963); State v. Wasserman, supra, and In re I.T. and K.T., supra.

II Payment to Foreign Attorney
The essential provisions of N.J.S.A. 9:3-54 herein involved provide that no person shall pay, give, or agree to give any money in connection with a placement for adoption except for fees or services of an approved agency or reimbursement of medical, hospital or other similar expenses in curred in connection with the birth or any illness of the child.
It appears unmistakably clear that the payments by plaintiffs of such items as air fare for the child and escort, attorney's fee to the foreign attorney and fees paid for the foreign court proceedings and passport, were all payments of money that should subject the plaintiffs to violations of the said Statute. These payments were mailed from New Jersey and intended to pay the incidental expenses necessary to have the child placed in the plaintiff's home. Where no approved agency is involved the Legislature intended to permit payment only for medical or hospital bills related to the birth or any illness of the child. Surely the payments of air fare and the foreign attorney's fee could not qualify under the Statute. The so-called attorney's fee was more like a broker's fee or finder's fee.
*597 The facts present a prima facie showing that plaintiffs have used international agents and large sums of money to illegally obtain a child. They have used heir financial means to jump to the head of the line of those couples waiting for a placement by an approved agency.
Even though the court has concluded that plaintiffs may have violated both N.J.S.A. 9:3-39 and 9:3-54, the court has seen no evidence indicating that plaintiffs are unfit parents within the contemplation of N.J.S.A. 9:3-48(c)(4). The evidence does not warrant the conclusion that the possible criminal conduct of plaintiffs make them unfit parents or that the adoption would not be in the best interest of the child. However, the matter will be referred to the Union County Prosecutor in accordance with N.J.S.A. 9:3-55(b).
NOTES
[1] N.J.S.A. 9:3-17 to 36 were repealed when N.J.S.A. 9:3-37 to 56 became effective March 6, 1978.