## Allen v. Children's Services
*[Cite as 2 AOA 451]*

*Case No. 56869*
*Cuyahoga County, (8th)*
*Decided April 26, 1990*

*R.C. 3107.01*

*John E. Holcomb, Michael L. Fortney, Tod T. Morrow, Millisor & Nobil, 430 Quaker Square, Akron, Ohio 44308, For Plaintiffs-Appellees.*

*Thomas E. Lenahan, Thomas P. Gill, 75 Public Square, Suite 1320, Cleveland, Ohio 44113, For Defendant-Appellant, Seuffert Construction Co.*

*Douglas A. Gonda, Douglas L. Kohout, 615 Superior Avenue, N.W. Cleveland, Ohio 44113, For Defendant-Appellant, Greater Cleveland Regional Transit Authority.*

PATTON, C.J.

Appellant Children's Service (defendant corporation), an Ohio corporation certified by the Ohio Department of Welfare, appeals from a jury verdict of $17,000 in favor of plaintiff-appellee Ms. Geraldine Allen (Ms. Allen) for past and future expenses as a result of a breach of contract action.

The facts surrounding the breach of contract action are as follows: Ms. Allen, a single female, made an application for the adoption of a "healthy," female baby, age three, with defendant corporation in early 1977.

In August of 1977, Mr. Rohr, a social worker employed by defendant corporation, called Ms. Allen and told her a nine month old girl was available for her. At this time, Ms. Allen was told by Mr. Rohr the nationality and age of Ericka. He also told Ms. Allen that Ericka was examined by a physician and that she was indeed healthy. Moreover, Ms. Allen was informed that Ericka would be re-examined prior to placement. Ms. Allen then agreed to meet with Ericka for a few hours. In preparation for their meeting, Ms. Allen was told not to crowd Ericka so that she could adapt slowly to her new parent.

After a thorough investigation of Ms. Allen, Ericka, a nine month old, female baby, was placed with Ms. Allen on September 1, 1977. A written instrument entitled "Agreement for Adoptive Placement" was entered into and signed by both parties, attested by two witnesses and dated September 1, 1977. The language states as follows:

"Children's Services hereby agrees to place 'BABY GIRL' with MISS GERALDINE ALLEN, adoptive parent, in contemplation of adoption during which time the child is under the supervision of the Adoption Service of Children's Services and subject to its rules and regulations. The adoptive parents hereby agree to assume full financial responsibility for support, maintenance, medical and surgical care, and all incidental expenses of said child during such placement. Signed this *1st* day of *September, 1977.*"

Unbeknownst to both parties at the time, Ericka suffered from a severe to profound hearing loss.

Ericka's hearing impairment was not detected prior to placement. In fact, Ms. Allen was told by Mr. Rohr, a social worker for defendant corporation, that Ericka had already been examined by a physician and was found to be healthy. Further, Mr. Rohr indicated that Ericka would receive, and did receive, additional physicals prior to placement. The medical information supplied to Ms. Allen about Ericka revealed that she was indeed healthy.

Ms. Allen had scheduled a routine appointment on September 17, 1977 with Dr. Burns, Ericka's pediatrician. At this time, Ms. Allen did not have any specific concerns regarding Ericka's hearing. Any general concerns she had about Ericka's responsiveness was attributed to the fact that Ericka was in a new environment and had a new name.

Ms. Allen took Ericka back to Dr. Burns a second time so that Ericka could get her shots. Again, she did not voice her concerns regarding Ericka's hearing problems.

In November of 1977, approximately two months after placement, Ms. Allen took Ericka back to Dr. Burns a third time, for more shots and a hearing test. Dr. Burns placed a tuning fork near Ericka's ears and when she did not respond, he confirmed Ms. Allen's suspicions and advised her to take Ericka to a speech and hearing center for a complete evaluation.

On November 28, 1977, Ms. Allen took Ericka to the speech and hearing center. Ericka was diagnosed as having a severe to profound hearing loss. Ms. Allen then contacted defendant corporation. Mr. Rohr, in response to Ms. Allen's call, came out to her house. He performed his own perfunctory test on Ericka, jingling his keys to see if she would respond. She did not.

In December of 1977, Ericka was diagnosed as having a severe to profound hearing loss. Mr. Rohr, apprised of Ericka's hearing loss, told Ms. Allen she could give Ericka up and that defendant corporation would be willing to take her back. Ms. Allen felt she could not give her up because she and Ericka had already formed a strong emotional bond.

On April 11, 1985, a complaint was filed which alleged causes of action sounding in negligence, contract and fraud. On November 12, 1985, an amended complaint was filed. Defendant corporation moved for summary judgment on the statute of limitations issue, which was subsequently denied. The cause

proceeded to trial only on the breach of contract action and the jury awarded Ms. Allen $17,000. A timely appeal followed.

Defendant corporation assigns four errors for our review.

## I. WHETHER ALL OF THE CLAIMS RAISED IN THE AMENDED COMPLAINT WERE BARRED BY THE APPLICABLE STATUTES OF LIMITATIONS?

Defendant corporation essentially argues in its first assigned error that the trial court erred in denying its motion for summary judgment. Specifically, defendant corporation argues that all the causes of action in Ms. Allen's amended complaint are time-barred, leaving no genuine issue of material fact for trial.

In Ms. Allen's amended complaint, she alleged causes of action sounding in negligence, contract and fraud. The amended complaint was filed on November 12, 1985. The adoption agreement was signed September 1, 1977 and Ms. Allen was made aware of Ericka's hearing loss in December of 1977. However, we need not address the negligence and fraud claims, because plaintiff's counsel elected only to try the contract action. Therefore, we need only address the contract action.

No Ohio decision has been brought to the attention of this court which would allow damages to be awarded in a breach of contract action involving adoption proceedings. Additionally, nowhere in the statutory language dealing with adoptions and parental rights has the legislature expressly created a cause of action for damages in this kind of situation. R.C. 3107.01 *et seg.* Based upon this finding, we hold that Ms. Allen's contract claim is barred as a matter of law and should not have been allowed to proceed to the jury.

Accordingly, defendant corporation's first assigned error is sustained as to the contract action.

## II. WHETHER ADOPTION PROCEEDINGS AS IN THIS CASE CAN EVER BE CONSIDERED A CONTRACT?

## IV. WHETHER, WHEN AN APPLICANT FOR ADOPTION REQUESTS A "HEALTHY' CHILD, THE AGENCY PLACING A CHILD FOR ADOPTION BECOMES A GUARANTOR OF THE HEALTH OF THAT CHILD?

Defendant corporation essentially challenges whether children in adoption proceedings can ever be the subject of a contract.

Defendant corporation posits that to allow adoption proceedings to develop into a contract would be against public policy.

Specifically, defendant corporation argues that: (1) the jury could not have found a breach of contract because adoption agreements can never be considered contracts; and (2) adoption agencies are not guarantors of the health of the children which they place and therefore cannot be held liable for the placement of unhealthy children.

Under current Ohio Law, the only viable cause of action by adoptive parents against adoption agencies sounds in fraud. *Burr* v. *Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St. 3d 69. Chief Justice Celebreeze, writing for the majority, held that in order to prove "wrongful adoption," the adoptive parents must prove each element of the tort of fraud. *Id.*, at paragraph two of the syllabus. Chief Justice Celebreeze, commenting on the breadth of the *Burr* decision, stated that:

*"In no way do we imply that adoption agencies are guarantors of their placements. Such a view would be tantamount to imposing an untenable contract of insurance that each child adopted would mature to be healthy and happy.* Such matters are solely in the hands of a higher authority. Adoptive parents are in the same position, as, and confront risks comparable to those, of natural parents relative to their child's future. Our decision should not be viewed as altering traditional family relationships and responsibilities, nor should it be read as shifting part of the burden of parenting to society. However, just as couples must weigh the risks of becoming natural parents, taking into consideration a host of factors, so too should adoptive parents be allowed to make their decision in an intelligent manner. *It is not the mere failure to disclose the risks inherent in this child's background which we hold to be actionable. Rather, it is the deliberate act of misinforming this couple which deprived them of their right to make a sound parenting decision and which led to the compensable injuries.* Further, we intend that our decision will have no adverse effect on Ohio's many fine adoption programs. *It is the rare and fraudulent abuse of this station in society which we address."*

Therefore, Ohio does not recognize a breach of contract action by adoptive parents against an adoption agency.

Defendant corporation is not the guarantor of the health of Ericka. Ms. Allen's redress sounds in fraud and clearly her fraud claim was

barred by the four year statute of limitations. *Id.*, at paragraph three of the syllabus; R.C. 2305.09(C).

Moreover, we agree with defendant corporation and find the better reasoned view with respect to contract actions to be that "[a] bargained-for exchange *** with respect to the life of a child is repugnant ***." *A.L. and B.L.* v. *P.A. and M.A.* (1986), 213 N.J. Super. 391, 394, 517 A. 2d 494, 497.

Defendant corporation's second and fourth assigned errors are sustained.

### III. ASSUMING THERE IS AN ENFORCEABLE CONTRACT, DID NOT THE PLAINTIFF WAIVE HER RIGHT TO RECOVER UNDER IT?

Defendant corporation's third assigned error becomes moot because we find that there was no enforceable contract in this case.

Accordingly, judgment reversed and remanded with proceedings not inconsistent with this opinion.

*Judgment reversed,*
*and cause remanded.*

JOHN V. CORRIGAN, J.
DAVID T. MATIA, J., Concur