577 P.2d 723

**In the Matter of the APPEAL IN PIMA COUNTY JUVENILE ACTION NO. B-7087.**

**No. 2 CA–CIV 2604.**

Court of Appeals of Arizona, Division 2.

Aug. 31, 1977.

Review Granted Oct. 4, 1977.

Neighborhood Law Offices by Margaret L. Maxwell, Tucson, for appellant.

James P. F. Egbert, Tucson, for appellee.

Robert Douglas Little, Tucson, for Minor Child.

HOWARD, Chief Judge.

Appellant brings this appeal from the denial of her petition to adopt two-year old Tommy McCullom. Two points are raised in this appeal: (1) whether the trial court erred in applying Arkansas law to the consent and subsequent revocation of consent by the natural mother, Janice McCullom, and (2) whether the best interests of the minor child would be served by its adoption by appellant.

In late June 1975, W. L. and Janice McCullom were traveling with Tommy to Ft. Smith, Arkansas, where they met John and Darlene McBride who were managing a motel in Ft. Smith. Mr. McCullom convinced his wife to leave the child with the McBrides and to travel on without him. They suggested to the McBrides that the McBrides keep the child and adopt him as their own. A Ft. Smith attorney was contacted and the two couples were seen by the attorney on July 5. The deposition of Wayne Harris, the attorney, shows that he explained the procedure for adoption under Arkansas law and that the parties agreed to his statement of the law and asked that he

proceed as quickly as possible. The parties left while the consent to adopt was prepared, returning a few hours later. According to Mr. Harris, he observed a change in the demeanor of Mr. McCullom when the parties returned. Being suspicious of the proceedings, Mr. Harris stated that the adoption would not be commenced until certain conditions were met. He wanted to see a birth certificate to insure that the child was not stolen. He made it clear to the parties that he would proceed in an Arkansas court and stated that the adoption would be final upon entry of a court order, but that prior to the entry of any interlocutory order, the adoption would be meaningless. An original and three copies of the consent to adopt were apparently signed, the original being retained in Mr. Harris' file. No copy was received by the McBrides. The consent did not authorize the taking of the child from Arkansas. The parties subsequently left and on July 7, 1975, the attorney received a call from Mr. McBride stating that Mr. Harris' services would no longer be necessary, leaving the impression that the McCollums had taken the child back. The attorney closed the file and no adoption took place.

The McCulloms left Ft. Smith later that same day. A short time later, the McBrides left Arkansas with Tommy, went to Iowa and later came to Tucson. In December 1975, the McBrides received a letter from Mr. James Dunn of the same law firm as Mr. Harris, saying that Mrs. McCullom wanted her child back and threatening the McBrides with criminal prosecution for kidnapping the child.[1] In January 1976, the McBrides filed in superior court their petition for certification to adopt and petition for temporary custody of the minor child. After certification for adoption, a petition to adopt the child was filed. Late in 1976, the McBrides separated and a decree of dissolution of marriage was entered February 25, 1977. Mr. McBride subsequently withdrew from the petition to adopt the child and Mrs. McBride proceeded in her

sole capacity. At hearing on the petition, a letter from the Pearl River County Department of Public Welfare was received indicating that Janice McCullom was on probation for attempted murder. Petitioner Darlene McBride contended that a valid consent to adopt had been given by the natural parents and that Arizona law should be applied to the revocation, in which case revocation was not timely. Respondent McCullom contended that her consent was executed under duress and was therefore void. Further, she contended that the consent was timely revoked under the Arkansas statutes and cases.

After determining its jurisdiction to hear the matter, the court ruled that the consent was not executed under duress but that Arkansas law and its rules did govern its revocation and therefore the revocation was timely. It denied the petition. The child was ordered returned to the natural mother who traveled to Tucson from Mississippi to recover the child.

■ The conflict of laws question is of paramount importance since the laws of Arizona and the laws of Arkansas differ. The applicable law of Arkansas provided for an interlocutory decree which gave the prospective adoptive parents temporary custody of the child. Arkansas statutes § 56–104 et seq. The statutes also provided for a final decree similar to the final decree issued in Arizona. Under Arkansas law a consent can be revoked prior to the entry of an interlocutory decree. *A. v. B.*, 217 Ark. 844, 233 S.W.2d 629 (1950). The trial court found:

"Under Arkansas law, the consent of Respondent (natural mother) was withdrawn within the time frame allowed under the Statute and circumstances."

■ Adoption being a status, its creation and existence is governed by the law of the forum creating such status. 1 Conflicts of Law, Restatement 2nd, § 78. Here, there is no doubt the parties intended that

---

1. Mrs. McCullom had contacted him on September 3, 1975 for the purpose of securing the custody of her child.

the adoption occur in the court of Sebastian County, Arkansas, Ft. Smith district. The documents stated that the interlocutory and final order would be entered by such court and that the consent was being given in accordance with existing laws in effect in Arkansas. Mr. Harris, in his deposition, testified that he informed the parties of the effects of the consent under Arkansas law and explained the Arkansas procedure to them. We cannot see any reason to apply Arizona law in this case. Indeed, the trial court may have been concerned that to apply Arizona law would promote forum shopping since if the original state law would not be applied, the adoptive parent could have moved on until she found state law more to her liking. The trial court was correct in applying Arkansas law under the given set of circumstances. *A. v. B.,* supra, adopts the following view:

> " ' . . . [T]he question whether the natural parent may revoke consent previously given depends upon all the circumstances of the particular case, which may include such a variety of matters as the terms of the particular statute; the circumstances under which the consent was given; the length of time elapsing, and the conduct of the parties between the giving of the consent and the attempted withdrawal' whether the withdrawal was made before or after institution of adoption proceedings; the nature of the natural parents' conduct with respect to the child both before and after consenting to its adoption; the "vested rights" of the proposed adoptive parents with respect to the child; and, in some cases, the relative abilities of the adoptive parents and the natural parents to rear the child in a manner best suited to its normal development, and other circumstances indicative of what the best interests of the child require. Annotation 156 A.L.R. [1011]'." (Emphasis added)

We conclude that the court below did not abuse its discretion in allowing withdrawal of consent in spite of the fact that the natural mother was on probation for attempted murder. The record contained a favorable report on the natural mother from a welfare agency in Mississippi. The record further discloses that when she gave the child to Mrs. McBride she did so under the influence of her husband and out of fear. Mr. McCullom is presently in prison and is being divorced by the natural mother. Two months after she gave the child to the McBrides, the natural mother sought its return and she asked Mrs. McBride to return the child prior to the institution of the adoption proceedings here. Furthermore, the McBride divorce has somewhat dissipated its appearance of familial stability.

We believe that reasonable men could differ as to the propriety of the action taken by the juvenile judge, ergo, there was no abuse of discretion.

Affirmed.

HATHAWAY and RICHMOND, JJ., concur.