432 A.2d 1010

**K. N., a minor by her parent and natural guardian, J. N.**

**v.**

**Lonny CADES, Esquire and Mr. and Mrs. John Doe.**

**Appeal of Mr. and Mrs. John DOE.**

Superior Court of Pennsylvania.

Argued May 6, 1981.

Filed May 22, 1981.

Richard D. Malmed, Philadelphia, for appellants.

Jeffery Naftulin, Doylestown, for appellees.

Before SPAETH, CAVANAUGH and LIPEZ, JJ.

SPAETH, Judge:

This case involves a dispute over an infant girl. The lower court permitted the mother to revoke her consent to the child's adoption, and awarded custody of the child to the mother. The couple who wished to adopt the child have appealed. We affirm.

The child was born on January 21, 1981. Her mother was, and still is, an unmarried, sixteen-year-old high school student, living in her parents' home in Bucks County, Pennsylvania. Before the child's birth, the mother, in response to her parents' urging, agreed to give the child up for adoption. Arrangements for placement of the child with appellants were made by private intermediaries. One of the intermediaries was the nurse and office manager of the mother's obstetrician, the other was an attorney. Both intermediaries told the mother, and also appellants, that she had six months within which she could change her mind and get her child back. On January 24, 1981, three days after the birth, the mother and her parents signed a consent to the child's adoption and delivered the child to the nurse intermediary,

who the next day gave the child to appellants, who took her back to their home in Connecticut.

On February 13, 1981, appellants filed with the lower court a report of their intention to adopt the child.[1] On February 23, the Court Administrator wrote appellants that their report contained no information indicating that venue for the adoption was proper. In response, on March 9 appellants' attorney wrote the Administrator that venue was proper because Bucks County was the residence of the child's mother.

Meanwhile, the mother and her parents had had second thoughts about the adoption. On March 9, 1981, the mother and her mother informed the nurse intermediary that they wanted the child back. On March 13 they filed with the lower court a revocation of their consent to the adoption, and on March 17, a petition for custody of the child, designating as respondents the attorney intermediary and appellants. On April 1, a pre-hearing conference was held, at which appellants objected to the jurisdiction of the lower court. On April 10 the lower court dismissed the objection, accompanying its order with a memorandum opinion, and after a full evidentiary hearing, found that the mother had effectively revoked her consent to the adoption and ordered that the child be returned to her. It is from this order that appellants now appeal.[2]

Appellants make three arguments; they challenge the lower court's jurisdiction; they contend that even if the lower court had jurisdiction, the law of their domicile, Connecticut, should apply; and they urge that if we apply Pennsylvania law, we should overrule the settled case law that a natural parent may revoke consent to adoption at any

1. *See* 23 Pa.C.S.A. § 2531.

2. On April 14, 1981, this court by *per curiam* order granted appellants' request for a supersedeas. The case was placed on the argument list for the Philadelphia session beginning May 4, 1981. On April 30 the lower court, pursuant to Pa.R.A.P.1925, filed a full opinion and by May 6, when the case was argued, the parties had filed their briefs. We wish to commend the lower court and the parties for their promptness.

time up to the entry of a final decree of adoption, and hold instead that whether consent may be revoked depends upon the child's best interest.

–1–

■ The lower court was correct in its assumption of jurisdiction. Section 5344 of the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. § 5341 *et seq.*, provides as follows:

(a) General rule.—A court of this Commonwealth which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this Commonwealth:

(i) is the home state of the child at the time of commencement of the proceeding; or

(ii) had been the home state of the child within six months before commencement of the proceeding and the child is absent from this commonwealth because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this Commonwealth;

(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because:

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth; and

(ii) there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child;

(3) the child is physically present in this Commonwealth, and:

(i) the child has been abandoned; or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

(4)(i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (1), (2) or (3), or another state has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum to determine the custody of the child;  and

(ii) it is in the best interest of the child that the court assume jurisdiction;  or

(5) the child welfare agencies of the counties wherein the contestants for the child live, have made an investigation of the home of the person to whom custody is awarded and have found it to be satisfactory for the welfare of the child.

(b) Physical presence insufficient.—Except under subsection (a)(3) and (4), physical presence in this Commonwealth of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this Commonwealth to make a child custody determination.

(c) Physical presence unnecessary.—Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

The lower court had jurisdiction under Section 5344(a)(2). Both the child and her mother "have a significant connection with this Commonwealth," for the child was born, and the mother still resides, here.  In addition, "there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training, and personal relationships of the child," for one of the two homes available to the child—that of her mother and grandparents—is here.

Appellants argue that "[t]o suggest that there is evidence of the child's future care in the state is' to presume that custody will be awarded to" the mother.  Brief for Appellants at 10.  If accepted, however, this argument would render Section 5344(a)(2)(ii) meaningless.  Furthermore, we note that Section 5344(c) provides that "[p]hysical presence of the child, while desirable, is not a prerequisite for jurisdic-

tion to determine his custody." *See Joseph E. H. v. Jane E. H.*, 283 Pa.Super. 109, 423 A.2d 739 (1980); *In the Matter of D.L.S. and J.L.S.*, 278 Pa.Super. 446, 420 A.2d 625 (1980). Appellants would have us ignore this explicit language and find jurisdiction only when a child and the child's current custodians are physically present in the Commonwealth.

Appellants also argue that the lower court should have declined to exercise its jurisdiction, citing Section 5348 of the Act, which provides in part as follows:

(a) General rule.—A court which has jurisdiction under this subchapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(c) Factors to be considered.—In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the home state of the child.

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

(3) If substantial evidence concerning the present or future care, protection, training, and personal relationships of the child is more readily available in another state.

(4) If the parties have agreed on another forum which is no less appropriate.

(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in section 5342 (relating to purposes and construction of subchapter).

In appellants' view, Connecticut is both the "home state" [3] of the child and has a "closer connection" with them and the child. They point out that there is more evidence of the child's *present* "care, protection, training, and personal relationships" in Connecticut.

In the circumstances of this case, however, in which a newborn infant was handed over to a couple who immediately left Pennsylvania, we believe that the lower court was correct in exercising its jurisdiction. We note in particular the report appellants filed with the lower court, stating their intention to adopt the child, and their attorney's letter, stating that venue was proper because Bucks County was the residence of the child's mother. To assert less than a month later that the jurisdiction in which they sought to adopt the child was an inconvenient forum implies the sort of forum-shopping that the Uniform Child Custody Jurisdiction Act was designed to prevent. *See* 42 Pa.C.S.A. § 5342(a).

–2–

Appellants argue that "where custody of a child has been surrendered to prospective adoptive parents with the present intention of terminating parental rights of the natural parents, the law of the state in which the child resides with the adoptive parents [Connecticut] should be the law governing adoption and custody of the child." Brief for Appellants at 13. While not disputing the general principle that the domicil of a child is generally that of the child's parent or parents, Restatement 2d, Conflict of Laws §§ 14, 22, appellants assert that where a parent gives up a child for

---

**3.** The "home state" is defined as follows:

"Home state." The state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, or in an institution, for at lest six consecutive months, and *in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned.* Periods of temporary absence of any of the named persons are counted as part of the six-month or other period. 42 Pa.C.S.A. § 5343 (emphasis added).

adoption, the parent's intent must be that the child's domicil should shift to that of the adopting parents.

■ Appellants' argument seems to us flawed even in terms of those sections of the Restatement 2d, Conflict of Laws, on which they rely. *See* § 22, comment e, "abandoned child," ("[A]bandonment . . . . occurs when the parent gives custody of the child to another with the intention of relinquishing his parental rights and obligations . . . . [A] child abandoned by both parents retains the domicil possessed by the parent who last abandoned him at the time of the abandonment . . ."), and comment g, "adopted child," ("The child, at the moment of adoption, takes the domicil of the adoptive parent . . ."). In any event, we see no reason to apply the law of another jurisdiction in deciding the custody and adoption of a child born in Pennsylvania to a Pennsylvania mother, when the adopting parents chose to avail themselves of the laws of Pennsylvania by filing a report of their intention to adopt the child with the lower court, and when the original expectations of all the parties were that specific provisions of Pennsylvania law would apply.[4] The single fact that the adopting parents have taken the child to their home in Connecticut does not outweigh these many contacts with Pennsylvania. *See* Restatement 2d, Conflict of Laws, § 289 ("A court applies its own local law in determining whether to grant an adoption."); *Hunter Adoption Case*, 421 Pa. 287, 218 A.2d 764 (1966) (Pennsylvania law applied to revocation of consent to adoption executed in West Virginia, where natural parent, adopting parents, and child were all domiciliaries of Pennsylvania and adopting parents brought action in Pennsylvania).

–3–

Appellants recognize the settled Pennsylvania case law that "consent to adoption by the natural parent may be

4. As mentioned above, both intermediaries told the mother that she had six months within which she could change her mind and get her child back. Slip op. at 4, 18. In addition, at the April 10 hearing appellants both testified that they had been told the same. Slip op. at 9. N.T. at 159, 167.

withdrawn at any time before entry of the final decree of adoption." *In re Adoption of R. W. B.*, 485 Pa. 168, 172 n.2, 401 A.2d 347, 349 n.2 (1979). *See also In re Adoption of Baby Girl Fleming*, 471 Pa. 73, 369 A.2d 1200 (1977); *Chambers Appeal*, 452 Pa. 149, 305 A.2d 360 (1973); *Hunter Adoption Case, supra; Gunther Adoption Case*, 416 Pa. 237, 206 A.2d 61 (1965); *Hildenbrand Appeal*, 405 Pa. 579, 176 A.2d 900 (1962); *Harvey Adoption Case*, 375 Pa. 1, 99 A.2d 276 (1953); *Susko Adoption Case*, 363 Pa. 78, 69 A.2d 132 (1949). However, appellants urge us to depart from these cases and change the law by adopting the principle that "the natural mother should not be permitted to revoke arbitrarily her consent to surrender her child for adoption where it is not in the ultimate best interest of the child." Brief for Appellants at 5. They say:

> Since adoption proceedings may not be completed before six months, it is possible to place a baby with prospective parents, have them form a substantial emotional bond with the child, and then severe [*sic*] those ties without regard to the welfare of the child at the whim of the natural mother regardless of how ill-equipt she might be as a parent. Such a practice further invites extortion and blackmail and further tends to discourage adoptions and to impede the court in considering the true best interests of the child.

> It is suggested that the more enlightened view, and the current trend in the law is the one Pennsylvania should adopt. A welter of cases in other jurisdictions permit the court to consider the ultimate welfare of the child as part of the overall adoption proceeding. This is certainly preferable to the formalism in Pennsylvania.
> *Id.*

In support of this argument appellants draw our attention to an annotation, Annot.: Right of Natural Parent or Other Person Whose Consent is Necessary to Adoption of Child, to Withdraw Consent Previously Given, 156 ALR 1011,[5] and to

---

5. *See also* the annotations at 138 ALR 1038, 2 ALR 2d 887, and 74 ALR 3d 421.

cases from twenty-five different jurisdictions that have imposed varying restrictions on a parent's right to revoke consent to adoption. We have examined these cases and note that on the whole, the restrictions imposed may be explained either as the result of explicit statutory provisions governing the revocation of consent or as implications from the jurisdiction's particular statutory scheme.

Recently, our own legislature has passed a new Adoption Act, 23 Pa.C.S.A. § 2301 *et seq.*, effective January 1, 1981. Section 2711 of the Act provides that "consent to an adoption shall be required of . . . [t]he parents or surviving parent of an adoptee who has not reached the age of 18 years." 23 Pa.C.S.A. § 2711(a)(3). Section 2714 specifies the circumstances under which parental consent is not required:

> Consent of a parent to adoption shall not be required if a decree or termination with regard to such parent has been entered. When parental rights have not previously been terminated, the court may find that consent of a parent of the adoptee is not required if, after notice and hearing as prescribed in section 2513 (relating to hearing), the court finds that grounds exist for involuntary termination under section 2511 (relating to grounds for involuntary termination).

Parental rights may be "previously . . . terminated" by either a voluntary relinquishment proceeding[6] or an involuntary termination proceeding.[7] A necessary implication of this statutory scheme is that the legislature has approved the settled Pennsylvania case law. As the lower court observed:

> Had the legislature determined that a change in the law as to withdrawal of consent should have been made, the new Adoption Act would have reflected it. On the contrary, the rule that a consent may be withdrawn anytime before entry of a final decree was left intact.

Slip op. at 16.

6. *See* 23 Pa.C.S.A. §§ 2501, 2502, 2503.

7. *See* 23 Pa.C.S.A. §§ 2511, 2512, 2513.

Given this legislative approval, we do not consider ourselves free to change the settled law, that consent to adoption by a parent may be withdrawn at any time before entry of the final decree of adoption, by imposing a requirement that the parent first show that the withdrawal of consent is in the child's best interest.

We do not mean to suggest by what we have just said that but for the new Adoption Act we would change the law. We recognize the difficulty of the subject, and we are aware that our decision—whatever it may be—will bring grief, either to appellants or the child's mother. Nevertheless, nothing in this case suggests to us that appellants' solution would be better than that dictated by the settled law. The relationship between parent and child should be broken only with the greatest reluctance. Here, we think it would be most unjust to hold the mother to her promise, as appellants would have us do. She was very young. She consented to give her child for adoption only in response to her parents' urging. She received no outside or professional counseling to guide her in making so agonizing a decision. And she only made the decision after being assured that she had six months within which to change her mind and get her child back. We do not question appellants' love for the child. However, they took the child knowing that the mother might change her mind.

Having correctly found that the mother had effectively withdrawn her consent to the proposed adoption, the lower court further found that no grounds existed for the involuntary termination of her parental rights, see 23 Pa.C.S.A. §§ 2511, 2512, 2513, and that custody of the child should be awarded to the mother. See In re Custody of Hernandez, 249 Pa.Super. 274, 376 A.2d 648 (1977). We have nothing to add to the lower court's opinion on these issues; the lower court's determination of them is plainly correct.

We make one final observation. The lower court in its very thorough opinion and the mother in her brief rely on a recently filed memorandum opinion of this court. This was an error, for memorandum opinions of this court are

unpublished and carry no precedential weight. We call the attention of the Bar to the following notice:

## NOTICE TO THE BAR

In the following cases * decided by the Superior Court, the decision of the court below was affirmed per curiam. However, a memorandum opinion has been prepared and filed by the Superior Court in most of these cases and copies of the memorandum opinion have been forwarded to the chief counsel for the parties and to the lower court. These memorandum opinions contain the rationale of the Superior Court in reaching its decision. Copies of these memorandum opinions may be procured by members of the Bar or any member of the public at the prothonotary's officer of the Superior Court in the district in which the case arose. These memorandum opinions are not to be considered as precedent and cannot be cited for any purpose.

* This pertains to cases heard or submitted beginning with the March 1979 Session of the Superior Court.

271 Pa.Super. 587, 419 A.2d 182.

Affirmed.