270 N.J. Super. 225 (1994)
636 A.2d 1083
IN THE MATTER OF THE ADOPTION OF A CHILD BY T.W.C. AND P.C.
Superior Court of New Jersey, Appellate Division.
Submitted November 17, 1993.
Decided February 8, 1994.
*227 Before Judges GAULKIN, R.S. COHEN and WALLACE.
MacFall, Riedel & Miskowski, attorneys for appellants T.W.C. and P.C. (James W. Miskowski, on the brief).
*228 Courter, Kobert, Laufer, Purcell & Cohen, attorneys for respondent N.C. (Jane Ellen Doran, on the brief).
The opinion of the court was delivered by GAULKIN, P.J.A.D.
This case presents questions of jurisdiction and choice of law in an interstate private-placement adoption. N.C. (the mother), a New York resident, privately placed her newborn son for adoption by New Jersey residents T.W.C. and P.C. (the Coes, a fictional name). The Coes commenced an adoption proceeding in New Jersey, but the mother gave notice that she revoked her consent to the adoption. The Family Part judge determined that New Jersey had jurisdiction and that New Jersey law applied. The result was that the adoption was denied and the child was returned to the mother. The Coes appeal. We affirm.

I
The mother had been seriously injured in an automobile accident at age 16. When she became pregnant some seven years later, she believed that her disabilities made her unable to parent a child. She sought out a California adoption counsellor who provided profiles of prospective adoptive families, including the Coes. Arrangements for the private placement were made; the mother was represented by New York counsel paid by the Coes.
The child was born July 14, 1992 in a Connecticut hospital. The mother and child left the hospital on July 16 and went with the Coes directly to a restaurant in New York State. The Coes there took custody of the child after the mother executed and acknowledged a document consenting to the anticipated adoption, stating that the identity of the natural father was unknown and reciting that the mother was represented by the named New York attorney. Those matters appeared at the end of a printed form, captioned in the Superior Court of New Jersey but purportedly authorized by a New York statute, Domestic Relations Law § 115-b. The document provided:

*229 This consent may be revoked within 45 days of the execution of this document. If the consent is not revoked within said 45 days, no proceeding may be maintained by the parent(s) for the return of the custody of the child.
The revocation must be in writing and received by the court where the adoption proceeding is to be commenced within 45 days of the execution of the consent. The name and address of the court in which the adoption proceeding has been or is to be commenced is
SUPERIOR COURT OF THE STATE OF NEW JERSEY, COUNTY OF MORRIS, CHANCERY DIVISION, FAMILY PART, ADMINISTRATION & RECORDS BUILDING, MORRISTOWN, NEW JERSEY XXXXX-XXXX
If the adoptive parents contest the revocation, timely notice of revocation will not necessarily result in the return of the child to the parent(s), and the rights of the parent(s) to the custody of the child will not be superior to those of the adoptive parents. A hearing before a judge will be required to determine: (1) whether the notice of revocation was timely and properly given; and, if such notice was timely and properly given and the adoptive parents have contested the revocation, (2) whether the best interests of the child will be served: (A) by returning custody of the child to the parent(s); or (B) by continuing the adoption proceedings commenced by the adoptive parents; or (C) by disposition other than adoption by the adoptive parents; or (D) by placement of the child with an authorized agency. If any such determination is made, the court will make such disposition of the custody of the child as will best serve the interests of the child.
On August 17, 1992, the Coes filed their adoption complaint in the Superior Court of New Jersey, Chancery Division  Family Part, which entered an order fixing a preliminary hearing for October 30 (later adjourned to November 20) and directing notice to be given to the mother. See N.J.S.A. 9:3-48; R. 5:10-4. By letter dated October 1, 32 days after expiration of the 45-day revocation period stated in the consent document, the mother notified the court that she revoked her consent. The Coes responded with a motion to enforce the consent "in accordance with and as required by New York law, and terminating the parental rights of said mother"; alternatively, they requested a hearing "to determine whether the best interests of the child ... will be served by returning custody ... to the birth mother, or by his adoption."
At the same time, the Coes brought an action in New York to terminate the mother's parental rights and to consummate the adoption and also moved in the New Jersey action to dismiss their complaint in favor of the New York proceedings. The mother *230 then filed an answer to the New Jersey adoption complaint, which included demands for a declaration that New Jersey had jurisdiction over the adoption, for a declaration that New Jersey law governed and for an order enjoining the Coes from proceeding in New York.
Following argument on those applications and cross-applications, the Family Part judge entered an order (1) holding that New Jersey had jurisdiction, (2) declaring that "the decisional and statutory law of ... New Jersey shall control disposition of [the lawsuit]," (3) enjoining the Coes from proceeding further in the New York action, (4) denying the Coes' motion to dismiss their complaint, (5) appointing Dr. David M. Brodzinsky, a clinical psychologist, to report "relative to the [mother's] ability to parent the minor child" and (6) scheduling a plenary hearing on all "issues raised." At the conclusion of the plenary hearing, conducted over four days in March 1993, the judge found no adequate basis under New Jersey law to terminate the mother's parental rights. She accordingly entered final judgment dismissing the Coes' complaint with prejudice and returning the child to the mother's custody. The trial court, this court and the Supreme Court all denied the Coes' applications for stay pending appeal.

II
In approaching the jurisdictional questions, we start with the proposition, accepted by the parties, that the New Jersey Adoption Act, N.J.S.A. 9:3-37 to -56, grants our courts subject-matter jurisdiction of adoptions by New Jersey residents, whether the children are received from within or without New Jersey. See N.J.S.A. 9:3-47, -48; In re Adoption by D.F.H., 230 N.J. Super. 445, 553 A.2d 866 (App.Div. 1989). But an interstate placement requires consideration also of the Interstate Compact on Placement of Children (ICPC), N.J.S.A. 9:23-5 to -17, the Uniform Child Custody Jurisdiction Act (UCCJA), N.J.S.A. 2A:34-28 to -52, and the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A.
*231 The ICPC is designed to promote the proper placement of children and to provide "[a]ppropriate jurisdictional arrangements for the care of children." N.J.S.A. 9:23-5 (ICPC, art. I). New Jersey and New York are both signatories to the compact. N.Y.Soc.Serv.Law § 374-a (McKinney 1992). An interstate placement is unlawful if it is effected in violation of the ICPC's terms. N.J.S.A. 9:23-5 (ICPC, art. IV). The record here indicates, and the parties do not question, that the New York placement of the child for removal to New Jersey was in full compliance with the compact, on notice to and with the approval of the New York compact administrator. Id. (ICPC, art. III). The ICPC thus presented no obstacle to the Family Part's exercise of jurisdiction under the New Jersey Adoption Act; indeed, N.J.S.A. 9:23-17 specifically directs that the court "shall follow the procedures and implement the requirements as are otherwise contained in law" in its administration of placements subject to the compact.
The UCCJA and the PKPA, however, do impose strictures on the court's exercise of jurisdiction here. The UCCJA, which has also been enacted in New York, see N.Y.Dom.Rel.Law §§ 75-a to 75-z (McKinney 1988), fixes standards and procedures for determining "when a state should exercise original jurisdiction in a custody proceeding, that is, when no state is in the midst of custody proceedings or has made a custody award after such proceedings." Neger v. Neger, 93 N.J. 15, 25, 459 A.2d 628 (1983). The UCCJA term "custody proceeding" has been held "to include a dispute between a natural parent and adoptive parents." E.E.B. v. D.A., 89 N.J. 595, 607, 446 A.2d 871 (1982). Although E.E.B. involved habeas corpus proceedings, its rationale warrants application of the UCCJA in adoption proceedings as well. See, e.g., State ex rel. Torres v. Mason, 315 Or. 386, 848 P.2d 592 (1993); Bernadette W. Hartfield, The Uniform Child Custody Jurisdiction Act and the Problem of Jurisdiction in Interstate Adoption: An Easy Fix.?, 43 Okla.L.Rev. 621 (1990). E.E.B. also implicitly holds, as other courts have held, that the PKPA applies to adoption proceedings. E.E.B., supra, 89 N.J. at 611-12, 446 A.2d 871; Adoption of Zachariah K., 6 Cal. App.4th 1025, 1033, 8 *232 Cal. Rptr.2d 423, 428 (1992); In re B.B.R., 566 A.2d 1032, 1038 (D.C.App. 1989); Rogers v. Platt, 641 F. Supp. 381 (D.D.C. 1986), rev'd on other grounds, 814 F.2d 683 (D.C. Cir.1987); Hartfield, supra, 43 Okla.L.Rev. at 15-16.
As expressed by Justice Schreiber in Neger, the UCCJA requirements are designed to assure that "the litigation invoking original jurisdiction should ordinarily commence in the state with which the child and his family have the closest connection and where significant evidence concerning the welfare of the child is more readily available." Neger, supra, 93 N.J. at 28, 459 A.2d 628. The UCCJA thus grants the Superior Court jurisdiction to make a child custody determination by initial or modification decree if:
(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
(2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships....
[N.J.S.A. 2A:34-31.]
Those UCCJA jurisdictional provisions are closely similar to, but not precisely the same as, those of the PKPA, which was enacted in 1980 "to establish national standards under which [State] courts ... will determine their jurisdiction to decide [child custody] disputes and the effect to be given by each such jurisdiction to such decisions by the courts of other such jurisdictions." 28 U.S.C.A. § 1738A, Historical and Statutory Notes. The PKPA requires that full faith and credit be given to a child custody determination made consistently with the provisions stated in that statute. 28 U.S.C.A. § 1738A(a). Insofar as here relevant, the statute declares that a child custody determination is consistent with the provisions of the PKPA only if
(1) such court has jurisdiction under the law of such State; and

*233 (2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships.
[28 U.S.C.A. § 1738A(c).]
Thus, while the UCCJA permits jurisdiction to be exercised by the "home state" or a state having a "significant connection" with the child or one of the contestants, N.J.S.A. 2A:34-31, the PKPA allows "significant connection" jurisdiction only if no state qualifies as the home state. 28 U.S.C.A. § 1738A(c)(2)(B); E.E.B., supra, 89 N.J. at 649, 446 A.2d 871; see generally Anne B. Goldstein, The Tragedy of the Interstate Child: A Critical Reexamination of the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act, 25 U.C.Davis L.Rev. 845 (1992). The jurisdictional requirements of the PKPA, of course, preempt those of the UCCJA if the acts are in conflict. See, e.g., Shute v. Shute, 158 Vt. 242, 607 A.2d 890 (1992); Enslein v. Enslein, 112 A.D.2d 973, 492 N.Y.S.2d 785 (1985).
The question, then, is whether the Family Part's exercise of jurisdiction here was consistent with the UCCJA and the PKPA. We find that the court did indeed have jurisdiction, but not for the reasons found by the trial judge.
The judge found that New Jersey was the child's "home state" as that term is defined in both the UCCJA and the PKPA:
(4) "home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period.
[28 U.S.C.A. § 1738A(b)(4).]
*234 See also N.J.S.A. 2A:34-30e (stating the same definition with minor differences in form).
Under that definition, New Jersey cannot be regarded as the child's "home state." The child had not lived in New Jersey "for at least six consecutive months" at the commencement of the proceeding. Nor had the child lived in New Jersey "from birth," for he was born in Connecticut to a New York mother and did not come to New Jersey until he was two days old. The mother's confinement in the Connecticut hospital might be regarded as the child's "temporary absence" from New York, but only upon his removal from New York two days after birth could the child be regarded as living in New Jersey.
Those courts that have applied the PKPA and the UCCJA in similar settings have reached like conclusions. In Adoption of Zachariah K., 6 Cal. App.4th 1025, 8 Cal. Rptr.2d 423 (1992), the mother gave birth to the child in California and immediately placed him with an Oregon couple, who shortly filed for adoption in Oregon. In finding that California did not have jurisdiction to entertain the mother's later action to revoke her consent, the California Court of Appeals held:
[The child] was brought to Oregon shortly after his birth. Since he neither lived with his parents in California for six months immediately preceding the time involved, nor lived with appellants in Oregon from birth, he has no "home state."
[Id. 6 Cal. App.4th at 1036, 8 Cal. Rptr.2d at 430.]
Similarly, in In re B.B.R., 566 A.2d 1032 (D.C.App. 1989), the child had been born in California but resided since he was two days old in the District of Columbia. In holding that the District did not have jurisdiction to grant an adoption, the Court of Appeals found that
[t]he child did not "live from birth" in the District. He lived in the District only from two days after birth. Hence, the District of Columbia cannot be seen as the "home State."
[Id. at 1038.]
*235 Responding to the adoptive parents' contention that the District of Columbia was "functionally" the child's "home state," the court added:
The purpose of the [PKPA], however, is to establish clear guidelines for determination of jurisdiction and it is not illogical to think that the drafters had in mind only a situation where the child was born and continued to live in the state of birth up until the relevant events occurred.
[Ibid. n. 16.]
See also Martinez v. Reed, 623 F. Supp. 1050 (E.D.La. 1985) (holding that Alabama "could not be classified as the home state" of a two-month old child born in Louisiana and immediately placed in the custody of an Alabama couple for adoption).
That reading of the statute leads to the conclusion that the child here had no "home state" at the time of the filing of the complaint. That is not troublesome. See Zachariah K., supra, 6 Cal. App.4th at 1036, 8 Cal. Rptr.2d at 430 (child who "neither lived with his parents in California for six months immediately preceding the time involved, nor lived with appellants in Oregon from birth ... has no `home state'"). The PKPA specifically contemplates that possibility, providing "significant connection" jurisdiction where "no other State would have jurisdiction" as a "home state." 28 U.S.C.A. § 1738A(c)(2)(B)(i); see Neger, supra, 93 N.J. at 36, 459 A.2d 628 ("significant-connection" jurisdiction is available "[i]f no state qualifies as the home state").
Notwithstanding the trial judge's mistaken view that New Jersey was the child's "home state," we are satisfied that the Family Part had "significant connection" jurisdiction under the PKPA, 28 U.S.C.A. § 1738A(c)(2)(B), and the UCCJA, N.J.S.A. 2A:34-31a(2). The child was placed in the custody of New Jersey residents in anticipation that he would be adopted and reside in New Jersey. The child lived in New Jersey at all times from two days of age. The placement in New Jersey was consented to by the mother and reviewed and approved by the New York ICPC administrator. The mother and the Coes agreed that the adoption action would proceed in the New Jersey court. No objection to the New Jersey venue was raised by the mother, the only New *236 York party to the action. At the time the complaint was filed, the child's present and future "care, protection, training and personal relationships" were thus all New Jersey-connected and the evidence bearing on those matters was available in New Jersey; the conclusion is inescapable that, since the child had no "home state," the New Jersey court was authorized to assume original jurisdiction of the adoption proceeding. 28 U.S.C.A. § 1738A(c)(2)(B); N.J.S.A. 2A:34-31a(2); see Zachariah K., 6 Cal. App.4th at 1036, 8 Cal. Rptr.2d at 430.
We recognize that New York might also be regarded as having sufficient connection with the mother and the child to support its own original jurisdiction. See, e.g., B.B.R., supra, 566 A.2d at 1038-39; In re Adoption of C.L.W., 467 So.2d 1106, 1110 (Fla.App. 1985). But neither the UCCJA nor the PKPA requires that one state's "substantial contacts" be weighed against another state's "substantial contacts" in order to entrust a single state with jurisdiction. See B.B.R., supra, 566 A.2d at 1039 n. 23. More than one state may have connections sufficient to support original jurisdiction; the PKPA specifically contemplates that possibility, prohibiting a state from exercising jurisdiction where another state "is exercising jurisdiction consistently with the provisions [of the PKPA]." 28 U.S.C.A. § 1738A(g).
Although the New Jersey court thus was authorized both by the UCCJA and the PKPA to exercise original jurisdiction, it had discretion to decline jurisdiction if it found another state to be a more appropriate forum. N.J.S.A. 2A:34-31a(4), -35; 28 U.S.C.A. § 1738A(c)(2)(D); see E.E.B., supra, 89 N.J. at 610-12, 446 A.2d 871. The Coes' motion to dismiss the New Jersey complaint after they had filed their New York complaint was essentially a request for such relief. The denial of that application cannot be regarded as an abuse of discretion. There was no certainty that the New York court would find sufficient contacts to support New York jurisdiction. New Jersey, on the other hand, had a substantial interest in the adoption and ample justification to take and retain jurisdiction. New Jersey's interest would not *237 have evaporated if New York had assumed jurisdiction, for the many and significant New Jersey connections would have endured even if New York handled the litigation. The New York court was not shown to have been in any better position to address and resolve the issues. The only apparent reason for deferring to New York would have been to provide a forum which might apply a different body of substantive law in resolving the issues. The Family Part was not required to participate in that kind of forum-shopping.

III
The choice-of-law issue arises from the consent to adoption executed by the mother. New York law provides that an extra-judicial consent to a private-placement adoption "shall become irrevocable forty-five days after the execution of the consent unless written notice of revocation is received by the court ... within said forty-five days." N.Y.Dom.Rel.Law, § 115-b(3)(a) (McKinney 1988). Further, even if notice of revocation is received within that time, the court may grant the adoption if it finds that "the best interests of the child will be served." Id. § 115-b(6)(d)(iii); see also id. § 115-b(3)(b).
New Jersey law is significantly different. Under our law, parents who have privately placed a child for adoption "shall have the right to object to the adoption," N.J.S.A. 9:3-46a, "unless and until there is a judicial determination that they have forsaken their parental obligations." In re Adoption of a Child of Indian Heritage, 111 N.J. 155, 183, 543 A.2d 925 (1988) (citing Sees v. Baber, 74 N.J. 201, 210, 377 A.2d 628 (1977)). If objection is made "by personal appearance or by letter," no adoption shall be ordered "unless the court finds that such parent has substantially failed to perform the regular and expected parental functions of care and support of the child, which shall include maintenance of an emotional relationship with the child." N.J.S.A. 9:3-46a; see also A.L. v. P.A., 213 N.J. Super. 391, 396-97, 517 A.2d 494 (App.Div. 1986). In a New Jersey private placement, then, "neither *238 consent nor voluntary surrender is singled out as a statutory factor in terminating parental rights," Sees v. Baber, 74 N.J. 201, 213, 377 A.2d 628 (1977), and termination requires a showing "that parental obligations had been forsaken." In re Baby M., 109 N.J. 396, 428, 537 A.2d 1227 (1988).[1]
The Family Part correctly held that New Jersey law was to be applied. The Restatement (Second) of Conflicts of Law, § 289 (1971) states the sound and generally applied rule: "A court applies its own local law in determining whether to grant an adoption." See Huynh Thi Anh v. Levi, 586 F.2d 625, 630 (6th Cir.1978); Adoption of C.L.W., supra, 467 So.2d at 1111; In re Female Infant F., 191 A.D.2d 437, 437, 594 N.Y.S.2d 303, 304 (1993); K.N. v. Cades, 288 Pa.Super. 555, 562, 432 A.2d 1010, 1014 (1981); In re Adoption of M.M., 652 P.2d 974, 980 (Wyo. 1982). That rule properly recognizes the dominant interest of the forum state in fixing the prospective adoptive child's status and relationships. As already discussed, a state can only assert original adoption jurisdiction if it has a significant relationship with the child; indeed, the UCCJA and PKPA are designed to assure that original jurisdiction is in the state where "the child and his family have the closest connection." Neger, 93 N.J. at 28, 459 A.2d 628. The very same considerations that permit the exercise of jurisdiction support the use of the law of the forum. If a state properly exercises jurisdiction over the adoption, it should not ordinarily be expected or required to apply the law of a foreign jurisdiction in deciding the issues.
*239 Circumstances might permit or compel a state exercising adoption jurisdiction to defer to the substantial and dominant interest of a foreign state and to apply the law of that state in deciding some or all of the issues. See, e.g., In re Pima County Juvenile Action, 118 Ariz. 437, 577 P.2d 723 (Ariz. Ct. App. 1977) (Arkansas law applied in pre-PKPA Arizona adoption proceeding, where private placement of child occurred in Arkansas under a consent that did not authorize removing the child from Arkansas, but child was removed to Arizona in apparent forum-shopping effort to overcome the mother's revocation of consent). No such circumstances are shown here.
At the filing of the adoption complaint, the child resided in New Jersey, as did the Coes. The consent executed by the mother and accepted by the Coes contemplated that the adoption would be presented to and decided by a New Jersey court. In keeping with that understanding, the Coes filed their petition in New Jersey. Those factors justify both New Jersey's assertion of jurisdiction and the application of New Jersey law. See Adoption of M.M., supra, 652 P.2d 974 (Wyoming law applied in Wyoming adoption proceeding brought by Wyoming residents following private placement in New York by New York mother); K.N. v. Cades, supra, 288 Pa.Super. 555, 432 A.2d 1010 (Pennsylvania law applied to determine validity of revocation of consent in Pennsylvania adoption proceeding brought by Connecticut residents following private placement in Pennsylvania by Pennsylvania mother). Although New York can be said to have an interest arising from the mother's residence there, see Adoption of M.M., supra, 652 P.2d at 980, that interest, which the mother herself did not urge, was not of such weight as to either require or justify application of New York law. See generally Restatement (Second) of Conflicts of Laws, § 6(2) (1971).
Nor is there merit in the Coes' contention that, because the adoption consent was executed in New York, New York law should in any event determine the validity of its time limit on revocation. New Jersey conflicts principles do not require that we apply the *240 law of the place of contracting. Rather, New Jersey employs "a more flexible approach which focuses upon the state which has the most meaningful connections with the transaction and the parties." Bell v. Merchants & Businessmen's Mut. Ins. Co., 241 N.J. Super. 557, 561-62, 575 A.2d 878 (App.Div.), certif. denied, 122 N.J. 395, 585 A.2d 395 (1990) (citation omitted). Under that test, the New Jersey connections we have described fully justify application of New Jersey law. Indeed, application of New York law to determine the efficacy of the consent would be inconsistent with and subversive of the core policy that local law should be applied in determining whether to grant an adoption.
We also reject the Coes' contention that New York law should be applied because the consent represented the parties' agreement that New York law would determine their rights. We do not so read the document. The consent cites and tracks the New York statute, but it also specifies that the adoption will proceed in New Jersey and says nothing at all about the law to be applied in that litigation.
In light of our holding that New Jersey law was correctly found to apply, we need not determine whether a New Jersey court could properly refuse, on public policy grounds, to give effect to otherwise applicable New York adoption law. See generally Colonial Penn Ins. Co. v. Gibson, 230 N.J. Super. 55, 552 A.2d 644 (App.Div. 1989) (providing that a court may reject conventional choice-of-law rules and apply New Jersey law if presented with "dominant and significant" public policy considerations).

IV
The remaining issues require only brief comment. We find that the record amply supports the Family Part judge's determination that the mother had not forsaken her parental obligations and that under New Jersey law, the mother's parental rights could not be terminated and a "best interest" hearing was not required. Although appointment of a guardian ad litem for the child would have been appropriate, the absence of that appointment did not *241 taint the proceedings or the judgment. And the Coes' assertions that the trial judge "prejudged the case" and "demonstrated a bias and prejudice" are thoroughly unsupported and unjustified.
The judgment is accordingly affirmed.
NOTES
[1] Zack v. Fiebert, 235 N.J. Super. 424, 563 A.2d 58 (App.Div. 1989), held that, in a custody dispute between a natural parent and a third party, the "best interests" of the child rather than the parent's "unfitness" is the appropriate test if the third party "is able to show that he or she stands in the shoes of a parent to the child and thus in parity with the natural parent." Id. at 432, 563 A.2d 58. We need not determine whether that holding is applicable in adoption proceedings; in light of our adoption statutes and precedents, the Coes' short-lived status as prospective adoptive parents cannot be regarded as putting them in parity with the mother.